Losing-, J.,
delivered tbe opinion of tbe court:
The premises were hired by the United’States for a rent specified, and thus a contract was made under wbicb the lessors surrendered tbe possession of tbe premises to tbe Uuited States, and they occupied them from August 23, 1861, to September 30, 1867.
Tbe first question is as to the terms of tbe contract. Tbe petitioner claims that the terms be proposed were accepted so far as they were not modified by tbe order of General Mansfield, and we think that is the fair inference from the circumstances, because the terms not modified were such as are usual and proper in such contracts and such as parties entering upon them would expect and make; and they were especially proper and called for in this case, in wbicb the premises were to be occupied by large numbers of common soldiers, whose use of them would be very different from that of a private family, and for whose use of them tbe United States, who held them there, should be responsible; and then tbe evidence shows that it was tbe practice of tbe United States to repair premises they bad *491 occupied, and therefore tlie parties would expect it. As to tbe fence destroyed during the occupancy by the United States of the northern part of the premises, before the written contract, they were then liable for that, and the agreement they should restore it and return it would be just and equitable.
It is a common thing that a contract should be contained in several papers; and if they are made at the same time, between the same parties, and in relation to the same subject, they are held to constitute one contract.
And the- question is not whether a contract was made, but as to the terms of the contract as they were understood by the parties at the time, and this is to be inferred from the circumstances shown. And where terms proper to the subject of the contract are proposed for acceptance, and a modification is made of some of them, and not of the others, the presumption would seem to be that those not modified were accepted.
And we therefore adopt the construction claimed by the petitioner, and on that the contract was as follows: The entire premises at $500 per month, for one year, with the right in the United States of renewal for three years, determinable within that time by them ; the trees and shrubberies to be strictly protected, and any unnecessary injury to be compensated for by the Government; the building to be kept in repair by the Government and to be left in as good repair as ordinary wear and tear will permit. The fence, destroyed before the written contract, to be restored and left in good repair.
The petitioner claims the amount, of reductions made from time to time in the rent stipulated in the contract. But, without protest, he receipted for the reduced payments as payments in full for the time specified in the receipts, and we think this bars his claim.
The petitioner claims indemnity for the injuries he sustained from the fire, and we think he is entitled to it. The rule between landlord and tenant is, that, on an express agreement to repair and keep in repair, the tenant is liable for loss or injury by accidental fire. This was expressly held in Bullock v. Demmet, (6 T. R., 650,) and was there declared to have been decided law long before. And it has never been questioned since, but often affirmed both in England and in this country. (Buckworth Canal Company v. Pritchard, 6 T. R,, 750; Phillips v. Stevens, 16 Mass., 245; 6 idem, 63.)
*492 The learned counsel for the defendants claimed that such a liability did not attach, to the tenant without a deed with express covenants to repair the premises in case of fire, and for this cited a verbal inaccuracy in Taylor’s Landlord and Tenant, § 148. But a deed or covenant is only an express agreement under seal, and the only effect of the seal is to import a consideration ■, the binding force is the agreement or contract, and this may as well be verbal or it may be inferred. Mr. Taylor, in his work cited, says: “ In general, where circumstances exist from which an agreement may be inferred, they are equivalent to an express agreement.” (Taylor, § 247.) And in reference to the liability of a- tenant, 1 Parsons on Contracts, 425, says : “ If there be an express and unconditional agreement to repair, or to redeliver in good order, or to keep in good repair, the tenant is bound to do this, even though the premises are destroyed by fire so that he is compelled to rebuild them.” And the numerous authorities he cites, both English and American, are to that effect.
All that is true is that where a tenancy from year to year is by mere occupancy, without any express agreement, the liability for destruction by fire is held not incidental to such mere occupancy. That is the decision in Holt, 7 ; 1 Marshall, 507, and other authorities cited for the defendant. And it is the rule in Maryland where the parties contracted. Thus, in the case of Wagner v. White, (4 Harris & Johnson,) which was for destruction by rioters, it was held the claim was not incident to mere use and occupation, but was recoverable on an express though verbal agreement.
Then the petitioner claims for damages done generally to the premises. These certainly were excessive and in the nature of waste, for which the tenant is liable at common law without any express agreement to repair, for he is bound to use the premises'in a hnsbandlike manner. This is incidental to the relation of landlord and tenant, and as much a part of their contract as if expressed in terms, and any default of the tenant in this is a breach of contract for which he is liable in damages.
The statement of facts shows that the premises were in excellent order when the United States took possession of them under the written contract, and they left them dilapidated and in ruinous condition; the flower-garden and shrubberies were destroyed ; shade and ornamental trees were cut down to the *493 amount of thousands; some miles of fence were destroyed; a brick wall 50 feet long, 9 feet hig'h, and 14 inches thick was taken down; a stone wall was taken down and its materials carried away ; shed and outbuildings were destroyed; the part of the house not burned was abused and its sashes and glass carried away, and large quantities of gravel and stone were dug from pits and quarries on the place, and carried away and used elsewhere. And the only qualification of this extensive and voluntary waste is that, previous to the written contract), soldiers encamped on the northern part of the premises by the United States had there destroyed about fifteen hundred trees and some fence.
Some of the bricks taken from the wall were used to make walks on the place, and others to build a lime-house, which the United States used to fumigate clothes of their sick; and it was claimed by the United States that these walks and lime-house remained on the place. That may be, but nevertheless taking down the wall and using the bricks to make walks and a lime-house -was strictly waste; the petitioner may not desire a lime-house in which to fumigate the infectious clothes of a small-pox hospital, nor brick-walks instead of gravel-walks. And the United States are liable for the cost of. removing the lime-house and walks, and restoring the walls and sheds, &c., as well as for the other injuries recited.
It was shown in evidence that many soldiers were buried on the premises, and this we think the contract did not authorize. A hospital is not a charnel-house, and such use of such premises is not usual, and the dead are generally buried in burying-grounds appropriated to the purpose. ■
It was also shown that the building was used as a small-pox hospital, and the petitioner claimed this as a special cause of damage. But we think such a claim cannot be supported. The building was hired for a hospital, and no exception was made of any particular kind of hospital, or any particular species of infectious diseases, to all of which soldiers are subject.
It was also shown that after the United States vacated the premises, the petitioner presented his claim, amounting to $32,493.25, to the Secretary of War, who referred it to the Quartermaster-General, who referred it for examination to the officers of his Department. They examined the case and reported upon it that the sum of $21,040.42 were justly due, and *494 tliis was approved by the Secretary of War, and the petitioner was notified by the War Department that his claim had been referred to the Third Auditor for payment of the sum specified. But the sum was not paid.
The petitioner contended that this finding, approved by the Secretary of War, was in the nature of a judgment, and concluded his right to recover the amount stated; and he cited and relied on the case of United States v. Jones, (18 How., 92.) In that case an officer was sick abroad and in France, and procured medical attendance, and afterward, while he was employed on special service there, in collecting information as to a steam navy, the Secretary of War sent to him the money to pay for his medical attendance, and it was so applied. It was held that the United States were legally bound to furnish the officer with medical attendance, and that where the Army surgeons could not be employed others must be, and the Secretary might employ them or ratify their employment and pay them ; and that the officer having applied money he received according to the command of his superior, could not be charged with it in his accounts at the Treasury, which was the point in issue. Thus the case was but the payment of a debt of the United States, like the payment for forage purchased, and in the regular course of the service in which the subordinate executed the order of his superior. But the case at bar is entirely a claim for unliquidated damages for breach of contract, for the relation of landlord and tenant, however formed, rests on contract. And we think that neither the War Department nor the Secretary of War were authorized to finally adjudicate the claim and conclude the parties to it.
The defendants contended that the writings which passed between the parties did not constitute a lease, but was an exec-utory agreement only, and the occupancy was from year to year and independent of the writings.
Whether writings make an actual lease or an executory agreement for alease depends upon the intent of the parties as shown by their words and acts, and when the parties surrender and take possession on and according to writings made between them, the legal presumption is that the writings were intended for a lease because the parties have so acted on them. Now, here the writings consist of specified terms, and the modification of part of them. And General Mansfield’s letter is that *495 tbe United States will hire on a certain event, viz, the vacation of the premises by the lessor, and that is made, and the United States enter. And this, we think, proves the intent to hire and let therefrom on the terms proposed and modified in the writings, and by and under those ivrilings, and especially as no other writings were made, and those made were acted on. And if so, then necessarily the lease was for a year certain, for General Mansfield specifies thatterm, and the right of theUnited States to renew under the contract did not begin till after that year had expired, and then the renewal was executed by the occupation of the United States, continued after the first year, and was thus executed for three years certain, determinable sooner by the United States only, because a renewal for that time, and no other was expressly stipulated between the parties. And the renewal and all the subsequent occupation by the United States were on the terms of the first contract, so far as they were applicable and not subsequently altered, as in the case of the reduced payments.
The statement of facts shows that at the time the house was burned it was insured by the petitioner for his benefit for the sum of $10,000, which was paid to him as for a total loss ,* and it was claimed for the defendants that if they were liable for the loss by fire they were to be credited with this sum as sub-rogated for the petitioner in the benefits of his contract with the insurance companies. But we think the defendants have no such rights. Such subrogation of the insurer for the insured belongs to marine insurance, which is a part of commercial law; and it is a doctrine of English equity law, for both of these deal with equities, but it does not belong to the common law, which deals with contracts, nor to the relation of landlord aud tenant. And it was introduced into marine insurance upon the difference between an actual total loss and a technical or constructive total loss, in which there is salvage and abandonment. But there is no such thin gin fire insurance on buildings, and there is no such rule between landlord and tenant in the common law. The fire-policy of a landlord, made in his own behalf and at his cost, does not attach to the building insured, but is personal to him. It is not a covenant running with the land, for these always are referable to tenure, and requires privity of estate and must affect it in quantity or quality, value nr enjoyment; and a fire-policy does none of these things, and therefore does not *496 enure to the benefit of the grantee of the insured. The lessee is a grantee, for a lease for a rent is legally a sale of the premises for a term.
The rule as to fire-policies on buildings was determined in the case of Carpenter v. The Providence Washington Insurance Company, (16 Pet., p. 495.) iu which the benefit of a fire-policy procured by the owner of premises insured was claimed by his mortagee of the premises. Iu their opinion the court had referred to and cited previous cases decided by them, and cases decided by Lord King and Lord Hardwicke; and then they say: “ The language of Lord King and Lord Hardwicke, and of this court in the cases already cited, shows conclusively that policies of this sort are not deemed in their nature incidents to the property insured, but that they are mere special agreements with the persons insuring against such loss or damage as they may sustain, and not the loss or damage that any other person having an interest as grantee, or mortgagee, or creditor, or otherwise, may sustain by reason of a subsequent destruction thereof by fire.” On this authority we hold the claim made by the defendants not sustainable.
The defendants pleaded the statute of limitations to all the claims of the petitioner. As to the claim for .reductions of rent, we have held these barred by the receipts in full, given as the rents became due. As to the claim for loss by fire, and for acts of waste done during the written contract, neither the evidence nor the plea specifies when they were done; and all that appears is that they were done previous to the vacation of the premises by the .United States, which was September 30,1867, and that was three years only before the filing of the petition, which was in September, 1870. The defendants, therefore, do not as to those substantiate their plea. The plea is efficient, therefore, only for the damage done before the written contract ; and for that we allowed it in the assessment of damages.