CITY OF PLATTSMOUTH v. NEW HAMPSHIRE SAV. BANK et al.

(Circuit Court of Appeals, Eighth Circuit. July 24, 1905.)

No. 2,220.

LANDLORD AND TENANT—LEASE—HOLDING OVER.

> The rule applied in a case where a tenant for years holds over his term with the consent of his landlord, express or implied, has no application to a case wherein the lease itself grants the tenant the power to continue the tenancy from year to year, for a specified number of years, on terms more favorable to the tenant, as to the payment of rent, than those imposed on the original term, and the tenant exercises the power conferred by remaining in possession beyond the original term, and makes payment of rent in accordance with the rent reserved for the continuing term.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Nebraska.

Rehearing denied September 8, 1905.

This controversy arose over the construction of a contract of lease entered into between appellant, the city of Plattsmouth (hereinafter called "the city"), and defendant, the Plattsmouth Gas & Electric Light Company (hereinafter called the "light company"), on the 23d day of October, 1896. The facts material to a decision of the question involved are these:

In the year 1885 the city granted to the light company a franchise to construct and maintain in the city a plant for the manufacture and sale of gas and electric light, and at various times thereafter entered into contracts with the light company to furnish lights to the city at the monthly rental of $233.33, or, in the aggregate, $2,800 per year. The last of these contracts ex-

pired November 15, 1900. On May 8, 1890, the light company executed and issued its negotiable bonds, in amount $30,000, bearing interest at the rate of 6 per cent. per annum, payable semiannually, on the 1st days of June and December in each year thereafter, until the maturity of the bonds. To secure payment of these bonds and interest, the light company on the same day made and executed a mortgage covering all the property rights, privileges, franchises, choses in action, rents, and profits then held by it, or of which it might thereafter become possessed. In this mortgage the Illinois Trust & Savings Bank, of Chicago, Ill., was nominated as trustee for the benefit of the holders of the bonds. The entire issue of bonds was sold and delivered to appellees herein, the New Hampshire Savings Bank and the New Hampshire Banking Company (hereinafter called the "banking company"). Thereafter, and on October 23, 1896, while the city was still obligated to the light company to receive and pay for lights furnished by it at the rate of $233.33 per month, or $2,800 per year, in pursuance of the provisions of an ordinance of the city duly enacted for that purpose, the contract of lease forming the subject-matter of this controversy was entered into between the city and the light company. This lease comprises 12 articles. In so far as material to this inquiry, they are as follows:

"Article 1. The Plattsmouth Gas & Electric Light Company, aforesaid, hereby and by these presents doth lease, set over, convey, and transfer unto the city of Plattsmouth, Nebraska, its successors and assigns, all of its right, title, interest, and estate in and to the following real, personal, and mixed property, to wit: [Description omitted]—for a period of four years and fifteen days from and after the first day of November, A. D. 1896, until the fifteenth day of November, A. D. 1900, at an annual rental of twenty-eight hundred ($2,800) dollars, payable in monthly warrants of two hundred and thirty-three and $33/100$ ($233.33) dollars each; the same to be paid in city warrants of said city drawn on the gas and lighting fund of said city.

"Art. 2. That in addition to the payment of the sum of money for the rental of said gas and electric light [plants], the said city of Plattsmouth hereby agrees and undertakes to pay the annual interest upon $30,000 of bonds at six per cent. per annum, being $1.800 payable in equal installments of $900 each upon the first days of December and June of each year until said fifteenth day of November, 1900, said sum payable to the Illinois Trust & Savings Bank, of Chicago, Illinois, trustee, its successors and assigns, as provided and required by the deed of trust made and executed by the said gas and electric light company, said gas and electric light company agrees to pay all interest due upon said bonds up to the first of November, 1896.

"Art. 3. That in consideration of the above lease and contract the said city of Plattsmouth, Nebraska, hereby agrees and undertakes to pay all taxes hereafter assessed and levied upon the property hereby conveyed and leased; said gas and electric light company hereby agrees to pay all taxes now due, assessed, and levied upon said property including the taxes for the year 1896.

"Art. 4. That on and after the 15th day of November, A. D. 1900, the said city of Plattsmouth, Nebraska, is hereby granted the right and shall have the power to continue this lease from year to year upon the terms and conditions herein set forth for a period ending on the first day of June, 1910, upon the payment of the sum of $1,800 per annum to the Illinois Trust & Savings Bank, of Chicago, Illinois, trustee, or its successors or assigns, as provided in article 2 of this agreement; and that said sum of $1,800 shall be in full payment for such lease for each year after said 15th day of November, 1900.

"Art. 5. That on and after the 15th day of November, 1900, the said city of Plattsmouth may at any time declare said lease terminated by giving to said Plattsmouth Gas & Electric Light Company written notice thereof at least sixty days before, of such intention to terminate said lease, and thereupon the termination of said lease as herein provided said city shall not be liable for the payment of said sum of $1,800."

"Art. 10. That on and after the 15th day of November, 1900, the said gas and electric light company hereby agrees to transfer in fee and forever by good and sufficient deed of conveyance and bill of sale to said city of Platts-

mouth all of the property hereinbefore set forth upon the payment by said city to said company of the sum of one dollar, and an agreement to pay or assume the bonds of said gas and electric light company now outstanding in the sum of $30,000, that said city shall have the option to take said property including franchise as herein set forth, or to continue this contract and lease upon the terms set forth in articles 4 and 5 hereof at any time after November 15, 1900, and prior to June 1, 1910.

"Art. 11. It is further stipulated and agreed by and between said parties that at the expiration of said lease the said city of Plattsmouth, Nebraska, unless it shall elect to take a conveyance of the same as provided, peaceable possession of said property shall be given to said Plattsmouth Gas & Electric Light Company in as good condition as it now is, the usual wear, inevitable accidents, and loss by fire excepted. That during the existence of this lease under the terms herein expressed, said Plattsmouth Gas & Electric Light [Company] hereby guaranties the title to said property and agrees to defend the same against all persons whomsoever."

The city entered into possession under this lease, and made the monthly payments to the light company and the semiannual payments of interest on the bonds to the Illinois Trust & Savings Bank, trustee, and paid the taxes and charges on the property, all as provided in the lease, until November 15, 1900. Thereafter, although the city remained in possession and operated the plant until March 1, 1902, without notice to the light company of which, if either, of the options mentioned in the lease it would avail itself, it neither paid, nor was it called upon by the light company to pay, any monthly installment of $233.33, but it did pay to the Illinois Trust & Savings Bank, trustee, the semiannual installment of interest falling due on the bonds December 1, 1900. On December 9, 1901, the city passed an ordinance directing its clerk to notify the light company it would terminate the lease on February 18, 1902, which notice was by the clerk given as directed. The interest on the bonds being in default October 23, 1901, the owners thereof, the banking companies, brought this suit in the Circuit Court to foreclose the mortgage made to secure the bonds, prayed an accounting of the amount due thereon, and also a personal decree against the light company, the city, and others. Thereafter a receiver was appointed in the suit, and on March 1, 1902, the city delivered possession of the premises to him, and also turned over to him personal property belonging to the city of the stipulated value of $805.30. On February 15, 1904, a decree was entered in the foreclosure suit directing a sale of the premises, but expressly reserving all questions of the personal liability of the city to complainants for future determination. Thereafter a sale of the plant was made in conformity with the decree, leaving a deficiency of more than $20,000. Thereafter complainants (the banking companies), on July 15, 1904, made application to the court for the extension of a deficiency judgment against the light company, which was entered without opposition; also, complainants made application for a judgment against the city in the sum of $13,783.30, a portion of this amount claimed, $5,941.65, being for rentals and moneys to be paid by the city at the rate stipulated in the lease from November 15, 1900, to March 1, 1902. During the pendency of this application the city paid to the receiver, under the terms of a written stipulation, the sum of $1,800, the amount of the semiannual installments of interest falling due on the bonds on the 1st days of June and December, 1901, during which time the city continued in possession of the plant; the city making the claim at the time of this payment the same was in full of all liability to complainants or the light company. However, as shown by the stipulation, the same was paid by the city and accepted by the receiver without prejudice to the rights of the parties. The city joined issue with complainants on the application made, but neither filed a cross-application against complainants, nor prayed any affirmative relief. Proofs were taken, and on final hearing a judgment was entered in favor of complainant, the New Hampshire Savings Bank, alone, and against the city, for the sum of $3,336.30, together with interest thereon at the legal rate of 7 per cent. from March 1, 1902, the date the receiver took possession of the property, and for costs accruing upon the application.

The judgment so entered against the city is not in any respect in the nature of a deficiency judgment, but is in the nature of a judgment in an independent action. All objection, however, to the method of procedure was expressly waived by the parties. The amount of the judgment so awarded against the city was arrived at in this manner:

| | | |
|---|---:|---:|
| The city was charged with rentals as stipulated in the lease from November 15, 1900, to March 1, 1902............................ | | $5,941 65 |
| And was credited with amount of interest paid on bonds.. | $1,800 00 | |
| Stipulated value of property belonging to the city turned over to receiver...................................... | 805 30 | |
| | $2,605 30 | $2,605 30 |
| Leaving a balance against the city of...................... | | $3,336 35 |

From the allowance of this judgment, the city appeals to this court.

Matthew Gering (Harvey D. Travis and Jesse L. Root, on the brief), for appellant.

William Baird (E. A. Baird, C. J. Baird, and Byron Clark, on the brief), for appellees.

Before VAN DEVANTER and HOOK, Circuit Judges, and POLLOCK, District Judge.

POLLOCK, District Judge, after stating the case as above, delivered the opinion of the court.

From an inspection of the record it is quite clear the judgment entered was intended to be and is based upon the claim made against the city for rentals at the rate of $233.33 per month, or $2,800 per year, during the time the city remained in possession of the plant from November 15, 1900, to March 1, 1902, at which time the property was turned over to the receiver. This appears from a reading of the application made against the city, and the fact, as shown by the decree, the credit of $1,800, claimed by the city and awarded by the trial court, was made by the city and allowed by the court as a payment of the only semiannual installment of interest falling due and unpaid prior to the date the receiver took possession of the property. For, if it be the city was liable to complainant for that portion of the semiannual installment of interest on the bonds falling due on June 1, 1902, earned while the city retained possession of the plant, in such case the personal property of the city turned over to the receiver, and credited to the city in the computation made in the decree at its stipulated value of $805.30, is more than sufficient in amount to meet such obligation. It follows, therefore, the sole question for decision here is, was complainant entitled to a judgment against the city based on this claim for rentals at the rate of $233.33 per month, or $2,800 per year, under the terms of the lease, from November 15, 1900, to March 1, 1902, construed in the light of the conduct of the city with reference to the property after November 15, 1900?

It is conceded whatever rights the light company had, under the provisions of the lease, against the city, by virtue of the mortgage, passed to, became the property of, and are enforceable by, complainant. It is perfectly obvious, however, the rights of complainant

thus transmitted cannot exceed those acquired by the light company. The precise question involved, therefore, is, what rights did the light company acquire against the city by reason of its continued occupancy of the leased premises after the expiration of the absolute term of 4 years and 15 days specified in the lease?

It is the insistence of solicitors for appellee in this regard that, as the tenant (the city) continued in possession of the leased premises after the expiration of the term for which they were originally let without notice to the landlord of its election to exercise either the option to renew the lease as provided for in article 4, or to terminate it as provided in article 5, or to purchase the leased premises as provided in article 10, it must be held as a matter of law to have assumed the position of a tenant holding over its term with the assent of its landlord; hence the law will imply an agreement on the part of the city to pay rent thereafter from year to year upon the same terms and conditions imposed by the lease on the original term. This is the view entertained by the trial court respecting the rights of the parties, as shown by the following excerpt from the opinion:

"The retaining of the possession of the leased property being with the apparent consent of the gas [light] company, it, and consequently the complainant, can claim rent for the period which the city actually occupied the leased property in accordance with the terms of the original lease."

The contention of the city is, it at no time assumed the position or incurred the liability imposed by law upon a tenant holding over the term, but that its continuance in possession of the premises after November 15, 1900, was in pursuance of the express provisions of the lease as to the amount of rent reserved thereafter, and that by payment of the semiannual installment of interest due December 1, 1900, to the trustee, which payment included interest falling due on the bonds for the period of 15 days after the original term of the lease, and which payment was accepted and retained by the trustee of the light company, and the bondholders as well, for their benefit, the city evidenced its intent to continue the tenancy under article 4 of the lease, with the knowledge of the light company and complainant of its intention. These, in substance, are the claims of the respective parties to the controversy.

It must be conceded to be the general rule, in the absence of statute, when a tenant for years, with the consent of his landlord, either expressed or implied, holds over his term, in the absence of stipulation to the contrary, the law will imply a tenancy from year to year, with the same rent reserved and time of payment stipulated for in the original lease. Singer Manufacturing Company v. Sayre, 75 Ala. 274; Wolffe v. Wolffe, 69 Ala. 549, 44 Am. Rep. 526; Clinton Wire Cloth Co. v. Gardner et al., 99 Ill. 151; Tolle v. Orth, 75 Ind. 298, 39 Am. Rep. 147; Schuyler v. Smith et al., 51 N. Y. 309, 10 Am. Rep. 609; Witt v. Mayor, etc., of New York, 6 Rob. (N. Y.) 443; Quinette v. Carpenter, 35 Mo. 502; Diller v. Roberts, 13 Serg. & R. (Pa.) 60, 15 Am. Dec. 578; Ives v. Williams, 50 Mich. 106, 15 N. W. 36; Martin v. Hammersky, 63 Kan. 360, 65 Pac. 637. Such

appears to be the rule in the jurisdiction where this controversy arose. Bradley v. Slater, 50 Neb. 682, 70 N. W. 258.

If, therefore, the city, in the light of the facts stated, is to be deemed a tenant holding over its term with the implied assent of the light company, an affirmance of the decree entered must follow, of course. The rule applied by the courts to cases where a tenant for years holds over his term with the implied consent of his landlord sprung from the necessity which arose in such case that, where the parties had continued the original status in the absence of any agreement between them, having neglected to make the same, the law should step in and imply a reasonable, fixed, and definite agreement for the parties, based on their former agreement. However, this rule has no application to cases where it may be gathered, from the contract of lease theretofore existing between the parties or otherwise, that the parties have made a valid agreement of their own touching the nature of the tenancy and rent reserved after the expiration of the time fixed in the original lease.

Recurring, now, to the lease in question, may it be said, in view of its express provisions, the parties thereto neglected to provide therein for the exact contingency which arose in this case at the expiration of the original term of 4 years and 15 days, namely, the continued possession of the city after November 15, 1900, to March 1, 1902? There is no contention made that the city elected to exercise the option to purchase the property, provided for in article 10; hence, that provision may be left out of the consideration. Article 4 of the lease in express terms states the nature of the tenancy to be created, the amount of rent to be paid and the time and place of its payment, in case the city should elect to continue the tenancy after the expiration of the original 4 years and 15 days' term, and further provides:

"That on and after the 15th day of November, A. D. 1900, the said city of Plattsmouth, Nebraska, is hereby granted the right and shall have the power to continue this lease from year to year upon the terms and conditions herein set forth for a period ending on the first day of June, 1910," etc.

The light company, in our opinion, thus not only by necessary implication waived notice of the election of the city to continue the lease beyond the original term, but expressly conferred upon the city irrevocably the power to thus continue the lease of its own volition, and without any subsequent arrangement with or notice to the light company, upon payment of rent as therein specified. The force of this article becomes more apparent when we refer to the provisions of article 5, which provides, not that notice of the election of the city to continue the tenancy after November 15, 1900, shall be given, but that it shall give 60 days' notice in writing of its intention to terminate the tenancy created by the lease, on or after the 15th day of November, 1900, if the city desired to end the term. As has been seen, such notice was given December 9, 1901, and the tenancy created thus terminated.

Again, by reference to the stipulation for surrender of possession by the city, found in article 11, it will be seen to relate, not specific-

ally to the date November 15, 1900, as the end of the term, but in general language to any expiration that might occur at any time under the former provisions of the lease. The language employed by the parties to this lease is clear, exact, definite, positive, and certain, free from all semblance of ambiguity, and hardly susceptible of doubtful construction. The continued possession of the premises by the city was not the holding over by it after the expiration of a fixed and definite term with the implied consent or assent of the light company, but was a continuance of the tenancy by the city in strict accordance with the express agreement of the parties, as evidenced, not alone by the language of the lease itself, but also by the subsequent conduct of the parties. This view of the case, we are persuaded, is in harmony with the current of authorities. Andrews v. Marshall Creamery Co. (Iowa) 92 N. W. 706, 60 L. R. A. 399, 96 Am. St. Rep. 412; Kramer v. Cook, 73 Mass. 551; Delashman v. Berry, 4 Am. Rep. 393; Montgomery v. Board of Commissioners of Hamilton County, 76 Ind. 365, 40 Am. Rep. 250. We are further persuaded the construction placed upon the different articles of the lease gives effect to the whole instrument, and makes plain and renders effective the intent of the parties thereto.

It follows the judgment must be reversed, and case remanded, with directions to dismiss the application.