## BLACK v. LA PORTE.

(Circuit Court of Appeals, Eighth Circuit. February 28, 1921.)

No. 5571.

1. **Animals ☞100(2¼)—Limitation of 60 days inapplicable to trespass suit against tenant.**

The requirement of Comp. Laws N. D. 1913, § 8500, that an action to recover for damages by trespassing animals, in which the animals are held to secure the damages, shall be brought within 60 days, does not apply to an action by a landlord against his tenant to recover damages for breach of a covenant in the lease that the tenant would not pasture his stock upon irrigated lands, in which action the landlord claimed no lien on the trespassing animals.

2. **Landlord and tenant ☞90(5)—Hold-over tenant is tenant or trespasser, at option of landlord.**

A tenant, who holds over after the expiration of his term, becomes either a tenant or a trespasser, at the option of the landlord.

3. **Landlord and tenant ☞90(2)—Tenant holds over under terms of lease.**

A tenant, who holds over after the expiration of his term under express permission by the landlord to remain for a reasonable time, holds under the provisions of the original lease, in the absence of the execution of a new lease or express stipulations to the contrary.

4. **Pleading ☞237(6)—Proffered trial amendment to conform to proof held improperly refused.**

In an action by a landlord against his tenant for breach of covenant in the lease not to pasture stock on irrigated lands, where the evidence showed such pasturing after the expiration of the lease, while the tenant was holding over with permission of the landlord, it was error to refuse a proffered amendment to the plaintiff's complaint, which theretofore had alleged the injury as prior to redelivery of possession and about the date of expiration of the lease, so as to allege the injury to have occurred prior to the date of surrender of possession.

5. **Landlord and tenant ☞152(3)—Lease held to require tenant to repair dam.**

A covenant in a lease, whereby the tenant bound himself to keep the irrigation system, including the dams, in as good repair as when the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lease was made, imposes an absolute obligation on the tenant to keep the dams in repair, especially where other clauses in the lease made provision for ordinary wear and tear of the premises.

**6. Landlord and tenant ☞152(4)—Tenant covenanting to repair must make good damage from natural causes.**

A tenant, who covenanted absolutely to keep the dams of an irrigation system in as good repair as when the lease was made, is required to restore the dam after its destruction by a flood, when it had been weakened by burrowing rodents, especially when the parties had so construed the lease by the tenant making similar repairs after previous destruction of the dam from the same causes.

In Error to the District Court of the United States for the District of North Dakota; Joseph W. Woodrough, Judge.

Action by William Black against John La Porte for damages for the violation of a lease. Judgment for defendant on a verdict directed in his favor, and plaintiff brings error. Reversed, and new trial awarded.

E. B. Goss, of Minot, N. D. (McGee & Goss, of Minot, N. D., on the brief), for plaintiff in error.

L. J. Palda, Jr., of Minot, N. D. (Palda & Aaker, of Minot, N. D., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. The plaintiff in error (hereafter called plaintiff) by an instrument in writing leased a large tract of land in North Dakota to the defendant in error (hereafter called defendant) for a term of years. Plaintiff brought this action, claiming that the defendant had violated the covenants of the lease. The defendant took issue, and pleaded a set-off. A verdict was directed in favor of the defendant for the amount of his set-off, less a small item of damage allowed to plaintiff, and plaintiff prosecutes this proceeding in error.

The specifications of error relate to rulings of the court in refusing to allow plaintiff to make proof under the first count of his complaint, refusing to allow an amendment to that count, and in refusing to submit to the jury the evidence under the second count in the complaint. After some evidence had been offered by the plaintiff, the court sustained an objection to the introduction of evidence under the first count in the complaint, upon the ground that no cause of action was stated in that count. That count alleged the execution of a written lease of the lands from plaintiff to defendant for a period of five years ending April 1, 1917. The lease was set forth, and among its covenants was the following agreement on the part of the defendant:

"That he will use all lands under ditches, and all that part of the above-described land which is under irrigation, for cutting and making hay alone, and that he will use no part of the land under ditches, or irrigated, at any time or during any part of any year, for pasturing horses and cattle."

It was alleged that the defendant occupied these lands under this lease for the five years, and after April 1, 1917, and that he caused plaintiff injury and damages, because in violation of the terms of the

lease; and in the fall of 1916, and the early spring of 1917, and during the term of the lease, he knowingly pastured and allowed the pasturing of his cattle upon the land under ditches and irrigated. Evidence was received on behalf of the plaintiff, showing that defendant occupied the lands under the lease and continued in possession until April 20, 1917, and that defendant's cattle occupied the irrigated lands after April 1, 1917, doing injury thereto. It was also shown that the plaintiff had notified the defendant in January, 1917, that it would not be necessary for him to remove from the lands exactly on April 1, 1917, if the weather was not suitable, and asked the defendant to inform him of the probable date he would remove. The plaintiff also visited at the ranch on April 2, 3, and 4, and again on April 10, 1917.

[1] He then arranged for a purchase from the defendant of some stock, grain, and machinery. The defendant then promised to remove soon, and the plaintiff made no demand for possession by any particular time. At this point the court sustained an objection to the introduction of evidence in support of the first count, upon the ground that it stated no cause of action. The court was influenced to this conclusion by reason of a statute of North Dakota (section 8500, Comp. Laws N. D. 1913) reading as follows: .

"Any person owning or having in his charge or possession any horses, mules, cattle, goats, sheep or swine, which shall trespass upon the lands of another, whether fenced or not fenced, shall be liable to the party injured for all damages sustained by him by reason of such trespassing, to be recovered in a civil action in the county in which such damages occurred, and the proceedings shall be the same in all respects as in other civil actions except as herein modified: Provided, that no property shall be exempt from execution issued upon judgments obtained under this chapter except absolute exemptions: And provided, further, that the party claiming damages under the provisions of this chapter shall bring an action to recover the same within sixty days after the infliction of such damages."

Other related sections (sections 8501–8506) allow the person injured to keep the offending animals in custody until the damages are paid or security is given, and for a lien upon the animals for the damages recovered. It was the view of the court that the plaintiff sought recovery under this statute, and that it afforded him the exclusive ground of recovery, and that the action had not been brought within the period of 60 days limited by the statute for beginning suit. The effect of the North Dakota statutes to which reference has been made has been considered by the Supreme Court of that state in the case of Schneider v. Marquart, 178 N. W. 195, and it was held that they applied only to cases where the person injured has seized the cattle and seeks to impress a lien upon the offending animals. We are satisfied with the construction thus given to the statute. The plaintiff in this case was not seeking any such a remedy. The first count of his complaint stated a cause of action for injury done to his lands in violation of the covenants of the written lease, and alleged as occurring before the expiration of its term. The court was in error in sustaining the objection to evidence upon the theory that the first count of the complaint stated no cause of action.

[2] We think the court also erred in sustaining the objection to the further offer of proof under the first count. The proof offered tended to show that the defendant continued to occupy the leased premises until April 20, 1917, and that plaintiff on April 4, 1917, advised the defendant that he was violating the terms of the lease by allowing his cattle to be upon the irrigated lands and that the defendant admitted it to be a violation of the lease and that he knew the lease was then in force. The terms upon which defendant held this land until he surrendered possession on April 20, 1917, were defined by his written lease except as to the length of his term. A tenant for years, holding over after the expiration of his term, without paying rent or otherwise acknowledging a continuance of the tenancy, becomes either a tenant or a trespasser at the sole option of the landlord. Taylor, Land. & Ten. §§ 22, 525; Conway v. Starkweather, 1 Denio (N. Y.) 113; Schuyler v. Smith, 51 N. Y. 309, 10 Am. Rep. 609; Wadsworth v. Owens, 21 N. D. 255, 130 N. W. 932; Dietrich v. Ely, 63 Fed. 413, 11 C. C. A. 266; 2 Tiffany, Land. & Ten. § 209. The plaintiff did not assume to treat the defendant as a trespasser, and this action proceeded on the theory of a tenancy.

[3] The proofs showed that the landlord had given express authority to the tenant to remain after April 1st for a reasonable time, and the tenant had acted upon that authority. No new lease was executed, but, in the absence of express stipulations, the new tenancy created by the tenants holding over after the expiration of a lease is implied by law to be upon the same terms and subject to the covenants contained in the expired lease. City of Plattsmouth v. New Hampshire Sav. Bank, 139 Fed. 631, 71 C. C. A. 507; Baker v. Root, 2 Fed. Cas. No. 780; Wadsworth v. Owens, 21 N. D. 255, 130 N. W. 932; Weston v. Weston, 102 Mass. 514; Harry v. Harry, 127 Ind. 91, 26 N. E. 562; Zippar v. Reppy, 15 Colo. 260, 25 Pac. 164; Taylor, Land. & Ten. § 525; 2 Tiffany, Land. & Ten. 1479; 1 Underhill, Land. & Ten. § 97.

[4] The proof offered should have been received as tending to show a breach of the covenant of the lease relating to the use of the irrigated land, although the pasturing of the cattle thereon may not have occurred until after April 1, 1917. We think the proffered amendment to the plaintiff's complaint, alleging the injury to have occurred prior to April 20, 1917, should also have been allowed, as it but more clearly stated an injury which had been alleged to have occurred prior to the redelivery of possession to the defendant and about April 1, 1917.

[5] The second count of plaintiff's complaint alleges a breach of another covenant of the lease by which the defendant bound himself to keep the irrigation system then in operation on the lands, including the dams, ditches, laterals, and other improvements in connection with the irrigation system, in as good repair as when the lease was made. It was alleged that the defendant had allowed one retaining dam, which was a part of the irrigation system, to be destroyed, and had failed to replace it, and damages were claimed in consequence of this failure. The evidence supported this claim, but there was some evidence that the dam might have been destroyed by the action of muskrats or other

rodents in so weakening it that an ensuing flood carried it away. The court struck out all testimony under this count, and refused to submit any issue thereunder to the jury, as he was of the opinion that there was no liability of the defendant for the action of the elements or for the weakening of the dam caused by rodents.

As to the lessee's liability for the condition of other portions of the leased premises, there was an expressed exception because of wear and tear and reasonable use, and damages by the elements; but the covenant relating to the irrigation system, and the dams which were a part of it, was an absolute obligation to keep them in repair, and no exception was stated. There is significance in the contrast of these covenants. It is true that other of the covenants, if they stood alone, were broad enough in language to include the irrigation system; but such general provisions must yield to a specific covenant, which singled out the irrigation system for special consideration.

There is another reason why the exceptions in the other covenants should not be read into the covenant relating to the dams and the irrigation system. The dams were made by throwing an embankment of earth across the streams, and the irrigation ditches were cut in the fields. The chief danger to the dams was the action of the elements, the floods arising from high water, and the action of animals such as muskrats in boring into the dam. The chief danger to the irrigation ditches was the ordinary filling of them, because the surrounding soil was carried into them. To allow an exception because of the ordinary wear and the action of the elements would therefore practically nullify the covenant to repair.

The parties also placed an agreed construction on the covenant, for the tenant replaced the dam when it was washed out by a flood in 1915, after muskrats had been working in the banks; and when it was again washed out in 1916 from the same causes, the plaintiff demanded that the defendant rebuild, and the defendant agreed to do the filling for a new dam, and the defendant testified that he had always been anxious and willing to pay for the dam. For these reasons the covenant must be regarded as an express covenant to repair.

[6] When the tenant makes an express covenant to repair, he must make good all damages, not only from processes of ordinary decay, but also from casualty, such as injury or destruction by fire or flood. Dermott v. Jones, 2 Wall. 1, 8, 17 L. Ed. 762; Polack v. Pioche, 35 Cal. 416, 95 Am. Dec. 115; Brecknock v. Pritchard, 6 T. R. 750; Compton v. Allen, Style, 162, 82 Eng. Rep. 612; Digby v. Atkinson, 4 Camp. 275; Leavitt v. Fletcher, 10 Allen (Mass.) 119; Phillips v. Stevens, 16 Mass. 238; Beach v. Crain, 2 N. Y. 86, 49 Am. Dec. 369; Lockrow v. Horgan, 58 N. Y. 635; Hoy v. Holt, 91 Pa. 88, 36 Am. Rep. 659; Gettysburg Electric Ry. Co. v. Electric Light, Heat & P. Co., 200 Pa. 372, 49 Atl. 952; McKinley v. C. Jutte & Co., 230 Pa. 122, 79 Atl. 244, Ann. Cas. 1912A, 452; David v. Ryan, 47 Iowa, 642; Cline v. Black, 4 McCord (S. C.) 431; Ross v. Overton, 3 Call. (Va.) 309, 2 Am. Dec. 552; Crocker v. Hill, 61 N. H. 345, 60 Am. Rep. 322; Fowler v. Payne, 49 Miss. 32; Ely v. Ely, 80 Ill. 532; Nave v. Berry, 22 Ala. 382; Proc-

tor v. Keith, 12 B. Mon. (Ky.) 254; Meyers v. Myrrell, 57 Ga. 518; Armstrong v. Maybee, 17 Wash. 24, 48 Pac. 737, 61 Am. St. Rep. 898; Bradley v. Holliman, 134 Ark. 588, 202 S. W. 469; Lovett v. United States, 9 Ct. Cl. 479; California Dry Dock Co. v. Armstrong (C. C.) 17 Fed. 216; 1 Taylor, Land. & Ten. §§ 357, 360, 364; 24 Cyc. 1085, 1088, 1089. See, also, Berg v. Erickson, 234 Fed. 817, 148 C. C. A. 415, L. R. A. 1917A, 648. The evidence under this count should have been submitted to the jury.

The judgment will be reversed, and a new trial awarded.