ORIENT INSURANCE COMPANY OF HARTFORD, CONNECTICUT, *v.* PIONEER MILL COMPANY, LIMITED.

No. 1507.

RESERVED QUESTIONS FROM CIRCUIT COURT FIRST CIRCUIT. HON. J. J. BANKS, JUDGE.

ARGUED JANUARY 22, 1924.                    DECIDED MARCH 14, 1924.

PERRY AND LINDSAY, JJ., AND CIRCUIT JUDGE O'BRIEN IN PLACE OF PETERS, C. J., DISQUALIFIED.

LANDLORD AND TENANT—*covenant to repair.*

A covenant on the part of the lessee of certain premises to keep the buildings *now* thereon in good order and repair *held* not to bind the lessee to rebuild a building destroyed by fire through no fault of the lessee.

OPINION OF THE COURT BY LINDSAY, J.
(Circuit Judge O'Brien dissenting.)

The material facts in this case are as follows: On March 28, 1918, one Sarah White, the lessee of certain premises situate at Lahaina, by written indenture subleased the same to defendant for a term of fifty-nine months. On May 19, 1921, said Sarah White insured the building standing on the demised premises with the plaintiff corporation in the sum of $1250 against loss by fire, and, while the insurance was in force the building

was, through no fault or negligence on the part of the lessee, entirely destroyed by fire. Plaintiff paid to Sarah White the sum of $1250 in full discharge of its obligation under the policy of insurance, whereupon said Sarah White, by an instrument in writing, assigned to plaintiff all of her right, claim and interest against defendant by reason of the destruction of said building. The lease to defendant expired on December 1, 1922, upon which date defendant delivered up the premises to its lessor without any improvements and erections thereon.

The plaintiff has brought this action, claiming that it has succeeded to the rights of Sarah White; that defendant has failed to keep and observe its covenants to keep the buildings on the premises in good order and repair, and to deliver up to the lessor the demised premises with all improvements and erections thereon at the end of the term; and that defendant is therefore liable to plaintiff in the sum of $1250 paid by plaintiff to Sarah White under the terms of the insurance policy.

Defendant demurred to the complaint on various grounds and the circuit judge has reserved for our consideration the questions raised by the demurrer. The fourth ground of defendant's demurrer is that it does not appear that the defendant is under any contract or duty to rebuild the building destroyed by fire.

The lease from Sarah White to defendant, upon which this action is predicated, recites that D. W. K. White (who at that time was insane and Sarah White having been appointed his guardian) is indebted to the defendant corporation in the sum of $585 for labor and material furnished by defendant in the erection of the building standing upon the demised premises, and that, in settlement of such indebtedness, defendant has agreed to accept a fully paid-up lease of said premises. The lessor, therefore, in consideration of the amount of such indebt-

edness, leases to defendant the said premises for the term of fifty-nine months from the 1st of January, 1918, the lessee covenanting (among other things) "that it will keep all buildings, structures and erections now on the demised premises in good order and repair; * * * and that it will at the expiration or sooner determination of the lease deliver up to the lessor said premises with all improvements and erections thereon."

If a building on demised premises is accidentally destroyed and the lease contains no express covenant on the part of the lessee to rebuild or replace the same, the loss must fall upon the lessor and not upon the lessee. The parties to a lease may of course agree upon whom such loss shall fall. Did the parties to the lease herein, at the time of its execution, so agree? Was it the intention of the parties, as expressed in their written agreement, that, in case the building upon the demised premises should, during the term, be accidentally destroyed, the lessee should rebuild the same or be liable in damages to the lessor for the value of the destroyed building? No obligation by law was imposed upon the lessee to rebuild, hence such obligation could only arise from contract. In other words, such an obligation, if it exists in this case, must have arisen by reason of an express agreement to that effect. *Gavan v. Norcross*, 43 S. E. (Ga.) 771.

On behalf of plaintiff it is contended that the covenants on the part of the lessee, to keep the buildings on the demised premises in good order and repair and to deliver up the premises to the lessor with all improvements thereon at the end of the term, were equivalent in law to an express covenant to rebuild the destroyed building. In support of this contention plaintiff cites numerous text-writers and cases. For example, in the case of *Chesterfield v. Bolton*, 2 Comyn 627, 92 Eng. Repr. 1241, in which the lessee of a one-hundred-year

term had covenanted that he "should and would sufficiently repair and keep in good and sufficient reparation the said capital messuage called Golden Grove, and so leave the same at the time of his decease; he being allowed to cut sufficient timber for repairing," the court held these covenants equivalent to an express covenant to rebuild, saying: "When the defendant covenants that he will repair and keep in good and sufficient reparation without any exception, this imports that he should in all events repair it; and in case it be burnt or fall down, he must rebuild it, otherwise he doth not keep it in sufficient reparation." In *Bullock* v. *Dommitt*, 6 T. R. 650, 101 Eng. Repr. 752, decided in 1796, and which is perhaps the leading case in support of the contention of plaintiff, the covenant on the part of the lessee was that "he, his executors, administrators and assigns would during the term of twenty-one years, when, where and as often as need or occasion should be and require, at his and their own costs and charges repair, uphold, support, maintain, amend and keep the said messuage and premises in needful and necessary repair." The defendant pleaded in defense that the building had been accidentally destroyed by fire. On demurrer to this plea the court held the demurrer good saying, "On a general covenant like the present, there is no doubt but that the lessee is bound to rebuild in case of an accidental fire; the common opinion of mankind confirms this, for in many cases an exception of accidents by fire is cautiously introduced into the lease to protect the lessee."

The American courts seem generally to have accepted the rule thus enunciated in England and have held (with the notable exception of the case of *Wattles* v. *So. Omaha Ice & Coal Co.* hereinafter referred to) that a general covenant by a lessee to repair or keep the premises in repair, when aided by the context, amounts to an express

covenant to rebuild structures accidentally destroyed. In *Phillips* v. *Stevens,* 16 Mass. 238, decided in 1819, the court held that the covenants of the lessee that he "would keep in repair, support and maintain all and singular the fences and buildings, saving and excepting the natural decay of the same, as should be needful, at his own proper cost and charge; and at the end of said term or other certain determination of said lease, whichever should first happen, would quietly leave, surrender and yield up the premises, in as good condition as the same were in at the date of said indenture, reasonable use and wearing thereof excepted," bound the lessee to rebuild, citing *Bullock* v. *Dommitt, supra,* and other English cases. To the same effect: *McIntosh* v. *Lown,* 49 Barb. 550; *Hoy* v. *Holt,* 91 Pa. St. 88; *Ely* v. *Ely,* 80 Ill. 532; *Abby* v. *Billups,* 35 Miss. 618.

The precise question herein has never arisen in this jurisdiction. In *Bowler* v. *Ahlo,* 11 Haw. 357, this court held that a covenant in a charter-party to surrender the vessel to the owner at the expiration of the term in as good condition as she now is in, ordinary wear and tear excepted, the vessel having been lost before the expiration of the charter through no fault of the charterer, did not render the charterer liable in damages for the value of the vessel, the presumption being that in such cases the parties contemplate that there should be a continuing obligation only in case of the continued existence of the thing whose existence is necessary to make performance of the covenant possible. In speaking of decisions by courts in construing covenants in leases the court, through Mr. Justice Frear, remarked at page 360, "The covenant to maintain the premises in repair, &c., if made without express exception or qualification, is held (perhaps by a somewhat strained construction) to be an absolute undertaking with no implied exceptions,

and the obligation continues though a house forming part of the premises be destroyed by fire; the tenant is obliged to rebuild. *Bullock* v. *Dommitt,* 6 T. R. 650. Hence, it is usual to expressly except damage by fire or other unavoidable casualty."

We are in hearty accord with the statement of Mr. Justice Frear that the authorities above cited must have reached the conclusions they did "by a somewhat strained construction." That these authorities in reaching the conclusion that a covenant to repair is equivalent to an express covenant to rebuild have done so by a strained construction seems all the more apparent when it is noted that it is generally held that, a covenant to deliver up the premises to the lessor in the same or as good condition as they were in when received, creates no obligation to rebuild in case of destruction by unavoidable casualty, but is a mere covenant against holding over. To the ordinary mind there would seem to be far more reason to construe an unqualified covenant to return an article in the same condition as it was when received as obligating the covenantor to in fact perform his covenant, than to construe a covenant to repair as an absolute covenant to rebuild, yet, as remarked by the court in *Warner* v. *Hitchins,* 5 Barb. 666, "In all those cases in which the same lease has also contained a covenant to surrender the premises in the same condition, or in as good condition, as at the commencement of the term, this covenant has not been noticed by the court as important, but the covenant *to repair* has been made expressly the basis of the recovery." In the case of *Levey* v. *Dyess,* 51 Miss. 501, the court, in construing a covenant on the part of a lessee to deliver up to the lessor the demised premises (a sawmill, etc.,) in good running order, except the usual wear and tear, held that this covenant did not bind the lessee to rebuild the mill which had been destroyed by fire,

saying, "In construing the covenants, the cardinal rule is the intention of the parties; and the courts will not extend or enlarge the obligations of the lessee for such losses beyond the plain meaning and intention of the parties. If there is not an express stipulation to rebuild or restore edifices and structures destroyed by casualty, or some covenant which is equivalent thereto, such as a covenant to 'uphold and repair' or to 'repair,' then the loss must fall upon the reversioner and not upon the lessee. And lastly, a covenant to redeliver or restore to the lessor in the same plight and condition, usual wear and tear excepted (or other words of like import), does not bind the covenantor to rebuild in case of casual destruction by fire, or impose the burden of the loss on him. The contemplation of the parties to such a covenant, applied to a house or a saw mill, machinery and appurtenances, is, that the lessee will take ordinary, reasonable care of the property, according to its nature; and that he will surrender possession when his right to enjoy has expired. It is not within the intendment, and according to general understanding, that such stipulation imposes upon the tenant the responsibility of an insurer. If that greater risk is assumed it must be clearly and explicitly set forth in the contract."

In *Gavan* v. *Norcross, supra,* the court in construing the word "repair" held that a covenant on the part of a lessor to repair did not bind the lessor to rebuild, saying: "The word 'repair' means to renew or to restore an existing thing, not to make a new one. A covenant to repair ordinarily does not bind the landlord to rebuild, though there are cases in which the word 'repair' aided by the context, has been held to mean 'rebuild.' Where the contract requires the tenant to keep the premises in repair, and return them in the same condition as when received or other language is employed showing an inten-

tion to make either party rebuild, such duty will be imposed even though the word 'rebuild' is not used." We must confess to an inability to comprehend why the word "repair" in a lease should be accorded one meaning when applied to a lessee and another meaning when applied to a lessor.

It must be conceded, that the authorities cited go, to what appears to us, an extreme length in holding that a lessee, who has covenanted to keep the demised premises in repair, has bound himself absolutely to rebuild a structure that without fault on his part is destroyed by unavoidable accident. But, in admitting the length to which these authorities have gone when construing the particular documents before them, does this mean that in *all* cases involving the construction of leases the courts are bound to such a harsh construction? That all courts have not felt so bound is most ably set forth by the supreme court of Nebraska in *Wattles* v. *So. Omaha Ice & Coal Co.*, 50 Neb. 251, 61 Am. St. Rep. 554. The covenants of the lessee in that case were "that at the expiration of the term above granted * * * he will quietly and peaceably yield up possession of said premises * * * in as good condition as the same were when entered upon, ordinary wear or damage by fire excepted. * * * It is understood and agreed that the buildings on the above described property have been placed in good repair by [the lessor] and shall be kept in the same condition by [the lessee] during the term of this lease, natural decay and wear and tear excepted." All the buildings on the demised premises were entirely destroyed by a violent hurricane and the lessor contended that the lessee was bound under his covenants to rebuild the same, which contention was upheld by the trial court which held that the agreements and promises made by the lessee amounted to a covenant on his part to rebuild

the destroyed buildings. Upon appeal the court stated the question involved thus: "The lessee covenanted to keep in repair the leased premises and at the expiration of the term surrender them in as good condition as they were when he entered, ordinary wear and tear and natural decay excepted. Does this covenant include a promise by the lessee to restore the buildings destroyed without his fault? That it does is the first argument urged in support of the decree. It is insisted that such was the rule of construction applied to such a covenant at common law." The court after discussing the cases and text-writers that support the rule contended for in all of its severity, and especially the case of *Phillips* v. *Stevens, supra,* goes on in the following language to state what in our opinion is the real question involved: "No one can find fault with the principle that a man should be compelled to perform what he has promised; but, with all due respect to the supreme court of Massachusetts, it seems to us that the court ignored the entire issue. The question there was not whether the lessee was obliged to perform a covenant he had made, but the question was what covenant he had made; that is, whether his covenant to repair and keep in repair the demised premises included within it a contract on his part to rebuild the buildings on the leased premises if they should be destroyed. But in that case [*Phillips* v. *Stevens*], as in the other cases cited, and in every case that we have been able to find which supports the contention of the appellee here, it was taken for granted that the rule at common law was that a covenant by a lessee to repair was equivalent to and involved a covenant to rebuild. Assuming, however, that such was and is the rule of construction at common law, are we bound by that rule?" The court then goes on to say that, although by statute the common law of England is applicable in Nebraska, it is provided

by another statute that in the construction of instruments concerning the conveyance of real estate or any interest in real estate, the courts are required to carry into effect the true intent of the parties so far as such intent can be collected from the whole instrument. Continuing, the court says: "If, then, the rule at common law is as is contended by the appellee, it is at most but a rule of construction, and we are not bound to apply that rule of construction to a real estate contract if to do so would result in giving to the contract an effect not within the contemplation or intention of the parties at the time it was made. We do not know why a lease for real estate should not be construed as any other contract,—why we should not apply to it the test universal among all civilized peoples, namely, to look to the subject-matter of the contract, the language of the parties, and ascertain, if we can, what was their intention; on what proposition did the minds of the contracting parties meet; what did they consciously consent to. If we apply this rule of construction to the contract under consideration we have for subject-matter of the contract a small tract of land, fifteen acres of which was covered with water. From this water ice could be harvested in the winter season, and stored in buildings then standing upon the leased premises. The lessee accepted his lease and entered upon these premises to use them solely for the purposes of harvesting and storing ice. When he did so he stipulated that the leased premises were in good repair, in good condition, and he promised that he would keep them in good repair and at the expiration of his lease so surrender them. What did the parties to this contract understand and intend by the terms 'repair' and 'keep in repair'? These words 'repair' and 'keep in repair' are not technical words, nor should they be given a technical or strained interpretation. They should receive their ordinary inter-

pretation.   To repair, as it is ordinarily used means to amend, not to make a new thing, but to refit, to make good or restore an existing thing.   (See *Todd* v. *Inhabitants of Rowley,* 8 Allen [Mass.] 51; *Stevens* v. *Milnor,* 24 N. J. Eq. 358.)   When we speak of repairing a thing, the very expression presupposes something in existence to be repaired.   If a carpenter contracts to repair a house, or a mason a chimney, the ordinary construction of these contracts would not be that these parties had agreed to build a new house or a new chimney.   If the construction of the lessee's covenant contended for by the appellee here be correct, then had this entire tract of land and its buildings been swept away by a flood of the Missouri river, the lessee would be liable for their value to the lessor.   Before we can say that a lessee assumed the liability of any such a contingency as that supposed, we must find his assumption of such a risk in the clear and express language of his contract."

In *Polack* v. *Pioche,* 35 Cal. 416, decided in 1868, it was held that a general covenant of a tenant to repair the demised premises is binding upon the tenant under all circumstances, even if the injury proceeds from the act of God, from the elements, or from the act of a stranger.   That case, however, has been, to all intents and purposes, reversed by the supreme court of California in the case of *Realty & Rebuilding Co.* v. *Rea,* 194 Pac. 1024, decided as recently as 1921, in which that court flatly held that a covenant on the part of the lessee to repair did not obligate it to rebuild or replace buildings accidentally destroyed by fire.   The opinion in that case clearly indicates the disfavor with which the court . regarded the harsh rule laid down by the earlier cases and its eagerness to seek a loophole of escape from such a strained construction.   It is true that the court seeks to justify its departure from the rule laid down in *Polack*

v. *Pioche* by referring to the fact that, since the decision in that case, section 1644 of the Civil Code, adopted in 1872, provides that "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." The statutory provision quoted, however, gave no power to the court that it had not always possessed, for that statute but declares the well known rule of contruction that has been in vogue for ages and section 5 of the same code expressly provides that "The provisions of this Code, so far as they are substantially the same as existing statutes or the common law, must be construed as continuations thereof, and not as new enactments." In a review of *Realty & Rebuilding Co.* v. *Rea,* in Vol. 10, p. 44 of the California Law Review the author says: "The last-named case also considers the effect of the usual covenants to repair and to surrender at the end of the lease in good condition. It decides that neither of these covenants requires the tenant to rebuild a building entirely destroyed by fire, without his fault, though to reach this result the court is obliged practically to overrule an important case, *Polack* v. *Pioche.* It is interesting to note that to annul the effect of the decision in the last-named case, without too violent a wrench, the supreme court resorted to section 1644 of the Civil Code in respect to the interpretation of contracts, a legislative declaration not in force at the time when *Polack* v. *Pioche* was decided, remarking, 'There is no apparent reason why a lease of real property should not be construed as any other contract pursuant to the Code provisions.' Though such a method of approach causes a temporary shock to one familiar with the ordinary covenants in leases as interpreted by the courts of common law, it is

probably a sane one. * * * The modern law, more completely disregarding form and seeking its principles in the ordinary conduct of human beings, looks rather to the presumed understanding of words by the parties 'in their ordinary and popular sense.' It is, of course, not a light thing to overrule doctrines established by earlier decisions, particularly in property law; but few, we think, will be found to grieve for the death of so technical a doctrine as that of *Polack* v. *Pioche.*"

The reasoning in the foregoing cases is so applicable to the instant case and so admirably and clearly sets forth what, to our minds, is a correct statement of the law relating to the construction of leases as well as other written instruments that we have quoted from them so liberally. Applying the principles so ably enunciated to the instant case, can it reasonably be gathered from the language of the lease that the lessee is bound to rebuild the destroyed building or that it is liable for its value to the lessor? As was well said in the *Wattles* case, the so-called rule of the common law is at most but a rule of construction and we are not bound to apply that rule if to do so would result in giving to the lease an effect not within the contemplation or intention of the parties at the time it was made. Rules of construction are only to be resorted to in aid of ascertaining the intention of the parties to an instrument and not to defeat such intentions. The statute quoted by the Nebraska court which required that court to seek to carry into effect the true intent of the parties is but declaratory of the familiar rule of the common law which has always been observed in this jurisdiction as the cardinal rule of construction. In the instant case it is noticeable that the lessee did not, as in so many of the reported cases, covenant generally to keep the demised premises in repair, the covenant here being that the lessee "will keep all

buildings, structures and erections *now* on the demised premises in good order and repair." Mr. Tiffany in his treatise on Landlord and Tenant, Vol. 1, p. 763, says, but we need not pass upon the point, that "A distinction might perhaps be suggested, in this connection, between a covenant to keep the *premises* in repair, and one to keep a *building* thereon in repair, on the theory that the repair of the premises involves the erection of a building in place of one destroyed, while the repair of a building on the premises at the time of the lease does not involve the erection of a new one upon its destruction."

In the construction of a written instrument the intention of the parties is to be sought by a scrutiny of every part of the instrument and from all the words used. The word "now" contained in the present lease must therefore be accorded some meaning and in our opinion that word clearly implies that the contracting parties had in mind the continued existence of the thing to be kept in repair. To the ordinary mind the word "repair" conveys the meaning given that term by Webster: " 'Repair' * * * means to restore to a sound or good state after decay, injury, dilapidation, or partial destruction, and the phrase 'in good repair' means in such state of reparation, and implies the existence of the thing to be repaired." Words and Phrases, Vol. 7, p. 6097. If the parties to the present lease intended that the word "repair" was to be given other than its ordinary meaning and the lessee was to become an absolute insurer, obligated to rebuild under all circumstances, why should such a serious obligation have been expressed in anything but the plainest of terms? In other words, if it was the intention of the parties that, in case the building should, during the term, be destroyed, the lessee would rebuild the same, why should that intention not have been clearly and unequivocally expressed and not hidden under

the apparently innocent promise on the part of the lessee to keep the building "in good order and repair"?

Whatever meaning may have been placed by courts upon the words "repair" or "keep in repair" when construing the various instruments in which those terms were used, is not of controlling weight for, after all, in the construction of written instruments, precedents are of but slight assistance, each case depending upon its own surrounding facts and circumstances. In every such case the all important question is what was the intention of the parties, and when that intention can be discovered that should control. In many of the cases cited which have held the lessee liable to rebuild, the courts may have been warranted in finding from the language used that such was the intention of the parties. From the instrument, however, that we are now called upon to construe, we can discern no such intention. As was aptly said by Sherwood, J., in *Van Wormer* v. *Crane,* 51 Mich. 363, 369: "The general obligation of the lessee to repair and his covenants to do so are not to be enlarged beyond their fair intent, and the tenant should not be held responsible for any damages in case of injury or destruction not anticipated, contemplated or intended when the lease was made, and the usual and commonly accepted meaning of the words used in the ordinary transactions of life should be given to the language used in the covenant."

We are of the opinion that the defendant herein is under no obligation to rebuild the destroyed building or to respond in damages for failure so to do. Our answer to the fourth reserved question is therefore in the affirmative.

*A. Withington* (*Robertson & Castle* on the brief) for plaintiff.

*I. M. Stainback* (*H. Holmes* with him on the briefs) for defendant.

DISSENTING OPINION OF CIRCUIT JUDGE O'BRIEN.

Being unable to agree with the conclusion reached by the majority in this case, I respectfully dissent.

In my opinion, the covenant made by the lessee, "that it will keep all buildings, structures and erections now on the demised premises in good order and repair," obligated the defendant to rebuild the structure destroyed by fire, or to respond in damage for its failure so to do.

Before considering the effect of a covenant to repair contained in a lease, it might be well to consider upon whom the law imposes the duty to make repairs to leased property.

In the absence of statute, or of express covenant, or stipulation in the lease, the lessor is not bound to make ordinary repairs to leased property. Nor is a covenant implied that the lessor will make any repairs to the demised premises. Independent of an expressed agreement on the part of the tenant, and in the absence of the landlord undertaking to keep the premises in repair, the law imposes upon every tenant, whether for life or for years, an obligation to so use the premises that no substantial injury shall be done to them and so that they may revert to the lessor at the end of the term unimpaired by wilful or negligent conduct on his part.

It has been the established rule of the common law for ages that an expressed covenant to repair, binds the covenantor to make good any injury to the demised premises, which human power can remedy. This covenant embraces not only the buildings on the premises at the date of the demise, but any new buildings erected during the term, unless the contract expresses a different intention, as when it stipulates to keep in repair the demised building.

Decisions extending over a period of three hundred years have held that, unless the covenant to repair is expressly made subject to an exception in case of fire or

other inevitable accident, the covenantor still remains bound by his agreement to repair, even when the house or other things to be repaired have ceased to exist in specie, owing to some event for which he is not responsible, whether such destruction be due to an accidental fire, lightning, or the act of a public enemy. This rule is the same both in law and equity. Performance of the covenant, under such circumstances, can, it is clear, only be attained by replacing its subject matter, a conception which finds a more distinct expression in the form in which the rule is generally stated, viz., that the tenant must rebuild after the destruction of the leased premises by fire.

The effect of this principle is also to render a tenant still liable on his covenant to pay rent, even though the premises are destroyed by any cause and the obligation of this covenant being distinct of, and unaffected by any qualification which may be introduced for the benefit of the tenant, into the covenant to repair. Hence, even where the covenant to repair is expressly made, subject to an exception of casualties by fire, the tenant remains liable for the stipulated rent, even though the premises have been burned down, and not rebuilt by the lessor.

In *Fowler & Moore* v. *Payne,* 49 Miss. 32, 79, the court said: "If a lessee stipulate unconditionally to pay rent without providing for its suspension in any event, and there is no agreement on the part of the lessor to repair, the tenant is without remedy at law or in equity and must pay the rent to the end of the term, though the tenement be destroyed by fire or other accident."

The reason for this rule usually given by the courts is that the lessee, by his own contract created the charge upon himself, and no fault being imputable to the landlord, he should not be compelled to bear it, as the lessee could, if he had chosen, have relieved himself by a stipu-

lation for the cessation of rents, in the event of such destruction.

Where a party by his own contract creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident, by inevitable necessity, because he might have provided against it in his contract. It is upon this theory that the courts have held that a lessee who covenants to keep the premises in good repair must rebuild all buildings which are destroyed during the term.

The authorities almost unanimously follow the construction the common law placed upon a general covenant to keep demised premises in repair. Only two cases can be found which deviate from this construction and the reason given is by virtue of a statute which changed the common law rule. No such statute exists in Hawaii and we are bound to follow the common law rule in the absence thereof. The Federal appellate courts and the Supreme Court of the United States have approved the rule of the common law and I am unable to understand why the majority have adopted a construction which is diametrically opposed to the ruling approved by these courts. The text books, without exception, follow the common law rule.

In *Polack* v. *Pioche,* 35 Cal. 416, 422, the court said: "A general covenant to repair is binding upon the tenant under all circumstances. If the injury proceeds from the act of a stranger, from storms, floods, lightning, accidental fire, or public enemies, he is as much bound to repair as if it came from his own voluntary act. Such has been the settled rule since the time of Edward III. (2 Platt on Leases, 186, 187, and cases there cited.) If the tenant desires to relieve himself from liability for injuries resulting from any of the causes above enumerated,

or from any other cause whatever, he must take care to except them from the operation of his covenant."

In *McIntosh* v. *Lown,* 49 Barb. (N. Y.) 550, 554, the court said: "The defendants' covenant in the lease, 'to keep the buildings and fences in good repair, except natural wear and tear' bound them to rebuild in case of accidental destruction by fire or otherwise. (*Comyn's Land. and Ten.* 185. 3 *Black. Com. by Chitty,* 229 *mar. paging, note.* 3 *Kent's Com.* 467, 468 *marg. pag. Chitty on Cont.* 7th *Am. ed.* 735. *Woodfall's Land. and Ten.* 326. *Warner* v. *Hitchins,* 5 *Barb.* 666. *Beach* v. *Crain,* 2 *Comst.* 86-93. *Bullock* v. *Dommitt,* 6 *T. R.* 650. *Proprietors of Brecknock and Abergaveny Can. Nav. Co.* v. *Pritchard et al., Id.* 751.) And numerous other authorities which might be cited."

In *Hoy* v. *Holt,* 91 Pa. St. 88, 90, 91, the defendants covenanted "to put said saw-mill in good repair and good working order, and the same so keep; and when all said timber is sawed into lumber and manufactured into shingles, to deliver said saw-mill to said Hoy (plaintiff), in reasonable good condition and repair." Speaking of this covenant the court said: "It has always been considered that where, in a lease there is an express and unconditional agreement to repair and keep in repair, the tenant is bound to do so, though the premises be destroyed by fire or other accident: See Chit. Con. 336; Ad. Con. 374; Brecknock *v.* Pritchard, 6 Term R. 750; Bullock *v.* Drommitt, Id. 650; Leeds *v.* Cheetham, 1 Simon 146; Digby *v.* Atkinson, 4 Camp. 275; Phillips *v.* Stevens, 16 Mass. 238; Linn *v.* Ross, 10 Ohio 412. * * * 'When the law creates a duty, and the party is disabled to perform it without any default in him, and he has no remedy over, the law will excuse it, as in waste, if a house be destroyed by tempest or by enemies, the lessee is excused; * * * but when the party, by his own contract,*

*creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract.   And, therefore, if a lessee covenant to repair a house, though it be burnt by lightning, or thrown down by enemies, yet he is bound to repair it.'"*

In *David* v. *Ryan,* 47 Iowa 642, 644, the appellant sought to put a construction on the word "repair" similar to the one placed upon it by the majority opinion, and the court said: "If the defendant is liable the liability arises out of her agreement to repair, and this agreement must have the same construction, whatever may be the relation of the parties. It is claimed that the word 'repair' simply means to restore to a good state after decay, injury, dilapidation or partial destruction, and that it does not require restoration of property wholly destroyed. The word has not been so construed in adjudicated cases."

In *Armstrong* v. *Maybee,* 17 Wash. 24, 29, the lessee covenanted to maintain all machinery and buildings on the leased premises "in as good condition and repair as the same now are in and return the same to the lessor at the expiration of said lease in as good condition as the same are now in, reasonable wear and tear excepted,"— and the court said: "But in the case at bar we are unable, from any fair reading of the whole lease, to find any doubtful language, or anything in the circumstances of the parties which would require other than one construction of the language used. *They chose to use language and terms which have had a received meaning in the courts for generations, and though the phraseology may slightly differ from that of contracts under consideration in some of the adjudicated cases, we cannot*

*see any distinction in the meaning. We are not able to find any qualification of the general covenant to repair in this lease. The contract is one before the court for construction and enforcement as the lessor and lessee have made it. Our conclusion is that it imposed on the lessee the obligation to rebuild the mill, which was destroyed by fire.*"

In *Wainscott* v. *Silvers*, 13 Ind. 500, the court said: "The law as between landlord and tenant, we understand to be, that the tenant is not responsible for buildings accidentally burned down, during his tenancy, unless *he has expressly covenanted, or agreed, to repair.*"

In *Ely* v. *Ely*, 80 Ill. 532, the court held that the legal effect of the covenant in a lease by the lessee to keep the demised buildings in repair at his own expense, and to yield up the premises at the end of his term, without any exemption of loss by fire, is that in case the building is burned the lessee will rebuild the same, and such loss will not stop the rent until the building is replaced.

In *Nave* v. *Berry*, 22 Ala. 382, 391, the court said: "On the face of the contract, there is the express obligation on the part of the lessees to deliver up 'the house, with the lots and appurtenances thereunto attached' at the expiration of the term. There is no obligation to repair, but simply 'to deliver up,' meaning to surrender back to the lessor. The decisions upon this subject make a distinction between an obligation 'to repair and deliver up' and one simply 'to deliver up.' *Whilst the former binds the obligor to rebuild in case of loss by fire during the term,* (Phillips v. Stevens, 16 Mass. 238,) the latter is construed to mean simply an obligation against holding over; and if the buildings are burned or destroyed during the term, without the fault of the lessee, he is not bound to rebuild, or to pay for the improvements so destroyed."

O'Brien, Circuit Judge, dissenting.

In *Phillips* v. *Stevens,* 16 Mass. 238, 239, the covenant was "that the defendant would keep in repair, support and maintain all and singular the fences and buildings, saving and excepting the natural decay * * * at his own proper cost and charge," and Parker, C. J., said: "Although the defendant had under his hand and seal, stipulated that he would keep in repair, support and maintain the fences and buildings, with the exception of natural decay, he was undoubtedly astonished at being called upon to rebuild a house, &c. the use of which he had enjoyed but for one year; *and yet he has, in express terms, covenanted so to do.* His excuse would be that he never read the covenants in his lease, or that he did not understand the force and effect of the terms. But the law does not protect men from their own carelessness or ignorance. The former they must cure; the latter they must provide against by asking counsel. *Any lawyer, in any village of the commonwealth, could have stated the hazard, and would have guarded against it, by introducing such an exception, as is now generally adopted in mercantile contracts, 'fire or other casualty excepted;' which would make the contract conformable to the intention of both the parties; as the words 'dangers of the sea and inevitable accidents' do in a charter-party or bill of lading.* The case of *Walton* vs. *Waterhouse,* and the cases cited by Sergeant *Williams* in his note (2) to that case, contain all the law upon this subject; the principle extracted from which is, 'that although a man may be excused from a duty imposed upon him by the law, if he is disabled from performing it without any fault of his own; yet when, by his own contract, he creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity; because he might have provided against it by his contract.' This doctrine is recognized and enforced in the case

of *Bullock* vs. *Dommitt,* and in the case from our own reports, before referred to."

In *Warner* v. *Hitchins,* 5 Barb. 666, 673, the lease contained a covenant on the part of the lessees, to surrender up the possession of the premises, etc., in the · same condition they were in at the date of the lease, but there was no covenant to repair. The buildings were destroyed by fire. The court said: "In looking at all the circumstances of the case, I am satisfied that neither party contemplated, at the time the lease was executed, that the tenants were to rebuild the erections, in case of their destruction by fire. This liability is an extraordinary one for the lessee to assume, and when it is intended, it is usually expressed in terms not susceptible of misconstruction. The covenant to repair has been in use for centuries; its appropriate office and design is understood, not only by lawyers but by laymen, and its omission is a strong reason for supposing that neither party intended, by other provisions, to assume or impose the obligations which it creates. The covenant to repair has always been regarded as imposing a more extended liability, than the covenant to surrender the premises in as good condition as found."

In *Levey* v. *Dyess,* 51 Miss. 501, 506, 508, 509, cited in the majority opinion, the court said: "The intention of the parties is the soul of the contract. The language used is the chief exponent, but the relations of the parties, the subject matter, and, if necessary, the attendant circumstances, may be looked to. *In those instruments most commonly in use, such as deeds of conveyance, leases and commercial instruments, certain words and phrases peculiar to each have, by usage and the decisions of the courts, acquired definite and fixed meanings. When they occur it may be assumed that the parties adopted the sense thus established.* But such is the flexibility of

language, that when technical and formal terms are omitted, and the idea is expressed in popular words, we may expect great variety in the expression. *We can, perhaps, best determine the extent of obligations assumed by the lessees by comparing their covenant with those most closely resembling it, which have been construed by the courts."* The court, after citing many authorities, proceeds: "We have referred to these cases out of a great number germain to the subject, because the covenants in each of them were closely analogous to that in the case before us. We deduce these principles from the authorities: First, that the lessee is not responsible to the lessor for the accidental, casual destruction by fire of the property demised, unless by his covenants he has made himself so. In construing the covenants, the cardinal rule is the intention of the parties; and the courts will not extend or enlarge the obligations of the lessee for such losses beyond the plain meaning and intention of the parties. If there is not an express stipulation to rebuild or restore edifices and structures destroyed by casualty, or some covenant which is equivalent thereto, such as a covenant to *'uphold and repair'* or to *'repair,' then the loss must fall upon the reversioner and not upon the lessee.* And, lastly, a covenant to redeliver or restore to the lessor in the same plight and condition, usual wear and tear excepted (or other words of like import), does not bind the covenantor to rebuild in case of casual destruction by fire, or impose the burden of the loss on him."

Williston on Contracts, Vol. III, Sec. 1967, contains the following: "An express covenant to repair or to keep in repair demised premises, obliges the covenantor not only to repair but to rebuild structures thereon, although the injury or destruction is due to the elements, unavoidable accident, or the wrongful act of a stranger."

O'Brien, Circuit Judge, dissenting.

Wood on Landlord and Tenant, Sec. 370, page 590, contains the following: "The distinction between an express and an implied covenant is most marked, in reference to injuries resulting from the elements. Under an implied covenant, the tenant cannot be charged with the duty of replacing buildings destroyed by tempest, fire, flood, or inevitable accident; but under an express covenant to keep and leave the premises in repair, the lessee is bound to make good an injury from *any* cause not resulting from the act or neglect of the landlord, as the agreement of the parties is merged in the lease, and if it was the intention of the parties to provide against the result of such casualties, it is presumed that such an exception would have been incorporated into the lease."

In 16 Ruling Case Law, Sec. 605, the following appears: *"It is the well settled common law rule that a tenant's general covenant to repair the demised premises binds him under all circumstances, even though the injury proceeds from an act of God, from the elements, or from the act of a stranger,* and if he desires to relieve himself from liability for injuries resulting from any of the causes above enumerated, or from any other cause whatever, he must take care to except them from the operation of his covenant. Under this rule, if the tenant enters into an express and unconditional covenant to repair and keep in repair, or to surrender the premises in good repair, he is liable for the destruction of buildings not rebuilt by him, though the destruction may have occurred by fire or other accident, or by the act of enemies, and without fault on his part. Under such covenant it has been held that the tenant may be compelled to rebuild in case of total destruction by fire, even though, subsequent to the execution of the lease, the fire limits of the city in which the property is situated are so extended that in rebuilding he must construct a more expensive building than the one burned."

O'Brien, Circuit Judge, dissenting.

Sutherland on Damages, Vol. 3, Sec. 855, contains the following: "It has been the established rule of the common law for ages that an express covenant to repair binds the covenantor to make good any injury to the demised premises which human power can remedy, even if caused by storm, flood, fire, inevitable accident or the act of a stranger. The covenant embraces not only the buildings on the premises at the date of the demise, but any new buildings erected during the term unless the contract expresses a different intention, as where it stipulates to keep in repair the demised buildings."

In *Black* v. *La Porte,* 271 Fed. 620, 624, decided February 28, 1921, the circuit court of appeals of the eighth circuit, construing a general covenant to repair, uses the following language: "As to the lessee's liability for the condition of other portions of the leased premises, there was an expressed exception because of wear and tear and reasonable use, and damages by the elements; but the covenant relating to the irrigation system, and the dams which were a part of it, was an absolute obligation to keep them in repair, and no exception was stated. * * * When the tenant makes an express covenant to repair, he must make good all damages, not only from processes of ordinary decay, but also from casualty, such as injury or destruction by fire or flood. *Dermott* v. *Jones,* 2 Wall. 1, 8, 17 L. Ed. 762; *Polack* v. *Pioche,* 35 Cal. 416, 95 Am. Dec. 115; *Brecknock* v. *Pritchard,* 6 T. R. 750; *Compton* v. *Allen,* Style, 162, 82 Eng. Rep. 612; *Digby* v. *Atkinson,* 4 Camp. 275; *Leavitt* v. *Fletcher,* 10 Allen (Mass.) 119; *Phillips* v. *Stevens,* 16 Mass. 238; *Beach* v. *Crain,* 2 N. Y. 86, 49 Am. Dec. 369; *Lockrow* v. *Horgan,* 58 N. Y. 635; *Hoy* v. *Holt,* 91 Pa. 88, 36 Am. Rep. 659; *Gettysburg Electric Ry. Co.* v. *Electric Light, Heat & P. Co.,* 200 Pa. 372, 49 Atl. 952; *McKinley* v. *C. Jutte & Co.,* 230 Pa. 122, 79 Atl. 244, Ann. Cas. 1912A, 452; *David* v. *Ryan,* 47

Iowa, 642; *Cline* v. *Black,* 4 McCord (S. C.) 431; *Ross* v. *Overton,* 3 Call. (Va.) 309, 2 Am. Dec. 552; *Crocker* v. *Hill,* 61 N. H. 345, 60 Am. Rep. 322; *Fowler* v. *Payne,* 49 Miss. 32; *Ely* v. *Ely,* 80 Ill. 532; *Nave* v. *Berry,* 22 Ala. 382; *Proctor* v. *Keith,* 12 B. Mon. (Ky.) 254; *Meyers* v. *Myrrell,* 57 Ga. 518; *Armstrong* v. *Maybee,* 17 Wash. 24, 48 Pac. 737, 61 Am. St. Rep. 898; *Bradley* v. *Holliman,* 134 Ark. 588, 202 S. W. 469; *Lovett* v. *United States,* 9 Ct. Cl. 479; *California Dry Dock Co.* v. *Armstrong* (C. C.) 17 Fed. 216; 1 Taylor, Land. & Ten. Secs. 357, 360, 364; 24 Cyc. 1085, 1088, 1089. See, also, *Berg* v. *Erickson,* 234 Fed. 817, 148 C. C. A. 415, L. R. A. 1917A, 648."

In *Dermott* v. *Jones,* 2 Wall. 1, 7, the Supreme Court of the United States states the following: "It is a well-settled rule of law; that if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him. The application of this principle to the class of cases to which the one under consideration belongs is equally well settled. *If a tenant agree to repair, and the tenement be burned down, he is bound to rebuild.* [Citing *Bullock* v. *Dommitt,* 6 T. R. 650.] A company agreed to build a bridge in a substantial manner, and to keep it in repair for a certain time. A flood carried it away. It was held that the company was bound to rebuild."

In *Osborn* v. *Nicholson,* 13 Wall. 654, 660, 20 U. S. (L. ed.) 695, the Supreme Court of the United States affirmed the doctrine of *Phillips* v. *Stevens,* and uses the following language: "If all the buildings upon leasehold premises be destroyed by fire, the lessee is nevertheless liable for the full amount of the rent during the residue of the term. [*Baker* v. *Holtzapffell,* 4 Taunt. 45.] *And if he has covenanted to repair, he must also rebuild.*

[*Phillips* v. *Stevens,* 16 Mass. 238.] So, if a fire occur after the contract of sale, but before the conveyance is executed, the loss must be borne by the buyer. [Sug. Vend. 291.]"

In *Wattles* v. *So. Omaha Ice & Coal Co.,* 50 Neb. 251, 69 N. W. 785, which is contra to the English and American decisions, the supreme court of Nebraska overruled the case of *Phillips* v. *Stevens,* which is approved by the Supreme Court of the United States in the above citation. The court admits, however, that the rule stated in *Phillips* v. *Stevens* is the common law rule and states if such liability existed at the common law, the law is modified in this respect by a statute providing that in the construction of instruments concerning the conveyance of real estate or any interest in real estate, it shall be the duty of the courts to carry into effect the intent of the parties so far as can be collected from the whole instrument. That this court is bound by the decisions of the Supreme Court of the United States needs no citation of authority.

In Tiffany on Landlord and Tenant, Vol. 1, Sec. 116 (p. 763), after stating the rule that where a tenant expressly covenants to repair and keep in repair premises, he is bound to rebuild in case of accidental fire, etc., the following reference to the ruling made by the supreme court of Nebraska in the *Wattles* case, appears: "In one state the view has been taken that the word 'repair,' meaning not to make a new thing, but to refit or make good an existing thing, does not require the tenant to rebuild upon the destruction of the building on the premises. However reasonable this view may be when there is a total destruction of a building on the premises, it does not seem applicable when a part only of a building is destroyed, since the reconstruction of that part involves the repair of the building considered as a whole."

In Jones on Landlord and Tenant, page 433, after

stating that, "It is the established rule of the common law that an express covenant to repair binds the covenantor to make good any injury which human power can remedy, even if caused by storm, flood, fire, inevitable accident, or the act of a stranger," the author refers to the *Wattles* case with the following comment: "This doctrine of construction was severely criticized and with the aid of a statute repudiated."

In *Realty & Rebuilding Co.* v. *Rea,* 194 Pac. 1024, 1028, the supreme court of California overruled the case of *Polack* v. *Pioche,* 35 Cal. 416, by virtue of section 1644 of the Civil Code. The court in discussing the *Polack* case and its reasons for overruling it says: "Moreover, even assuming that the case under discussion goes to the extent of requiring a rebuilding of a structure totally destroyed by fire without the fault of the tenant, and that such was the rule of the common law, that rule cannot be followed in the instant case. The rule is at most a rule of construction and is necessarily subject to *such contrary or inconsistent rules of construction as may have been devised and promulgated by our own legislature. In 1872, after the decision in Polack v. Pioche, supra, section 1644 of the Civil Code was adopted, providing*: 'The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning * * * unless a special meaning is given to them by usage, in which case the latter must be followed.' "

In 10 California Law Review, page 44, after stating that the supreme court resorted to section 1644 of the Civil Code in overruling the case of *Polack* v. *Pioche,* the following appears: "Though such a method of approach causes a temporary shock to one familiar with the ordinary covenants in leases as interpreted by the courts of common law, it is probably a sane one. The design of the Civil Code is obviously that the contract of hiring should

be treated in the main like other contracts; the simplification and unification of the law that will be brought about by subsuming the landlord-tenant relation under the obligation concept rather than under the dominion concept will ultimately work for better results. Meanwhile it is of interest to observe how far the law has travelled in its desire to carry out the 'intent of the parties' principle, a fundamental postulate of modern society. Under feudal principles, it was at least questionable whether a tenant for years was not liable, even without fault, and independently of stipulation, for permissive waste, where buildings were destroyed by fire. In the classical period of our law, where the written word controlled with almost absolute tyranny, the tenant was held to the letter of his promise."

In *Sun Insurance Office* v. *Varble,* 103 Ky. 758, 763, 41 L. R. A. 792, the common law rule is recognized and by virtue of a statute the general covenant to repair does not require a lessee to rebuild. The court said: "At common law, when the lessee expressly covenanted to repair, his liability was not confined to cases of ordinary and gradual decay, but extended to injuries done to the property by fire; and, if the premises were entirely consumed, he was bound to restore them within a reasonable time. *Redding* v. *Hall,* 1 Bibb, 536; *Bohannons* v. *Lewis,* 3 T. B. Mon. 380. At common law the tenant was bound to pay the rent, though the premises should be destroyed by inevitable casualty, unless he, by contract, provided otherwise. *Helburn* v. *Mofford,* 7 Bush. 169. The common law has been abrogated by our statutes. Section 2297, Ky. Stat. reads as follows: 'Unless the contrary be expressly provided for in the writing, no agreement of a lessee that he will repair, or leave the premises in repair, shall have the effect of binding him to erect similar buildings, if without his fault or neglect the same may be destroyed by fire or

other casualty, nor shall a tenant, unless he otherwise contracts, be liable for the rent for the remainder of his term of any building·leased by him, and destroyed during the. term by. fire or other casualty without his fault or neglect.' "

In *O'Neil* v. *Flanagan,* 64 Mo. App. 87, 89, the court points out that by virtue of a section of the· Revised Laws of Missouri a lessee is released from the obligation to rebuild where the lease contains a general covenant to repair.   The court said:. "The suggestion is also made, that the provisions of· section 2393, *supra,* are broad enough to relieve the defendant of his obligation to pay rent.   Counsel misconceives the object and purport of the statute.   As heretofore stated, the section was enacted to relieve lessees from the obligation to rebuild, where the lease contained a general covenant to repair."

In *Richmond Ice Co.* v. *Crystal Ice Co.,* 37 S. E. 851, 853, the supreme court of appeals of Virginia uses the following language:   "The claim of the plaintiff is resisted upon the ground that the buildings upon the leased premises were destroyed, without fault on the defendant's part, by an ice gorge in James river, and that under such circumstances it is relieved, by section 2455 of the Code, from obligation to pay the rent demanded.   That section is in these words.   'No covenant or promise by a lessee to pay the rent, or that he will leave the premises in good repair, shall have the effect, if the buildings thereon be destroyed by fire or otherwise, without fault or negligence on his part, or if he be deprived of the possession of the premises by the public. enemy, of binding him to make such payment or erect such buildings again, unless there be other words showing it to be the .intent of the parties that he should be so bound.   But, in case of such destruction, there shall be reasonable reduction of the rent, for such time as may elapse until there be again

upon the premises buildings of as much value to the tenant for his purposes as what may have been so destroyed; and, in case of such deprivation of possession, a like reduction until possession of the premises be restored to him.' At common law, if a lessee covenanted or promised to pay rent or leave the premises in good repair, he was held bound to fulfill his undertaking, notwithstanding the buildings on the premises were destroyed during the term, by fire or otherwise, without fault or negligence on his part, unless it was stipulated to the contrary in the lease. The revisors of 1849 proposed to change this harsh rule, and reported a section for that purpose, which has since been enlarged and carried into the section quoted from the present Code."

In *Ashby* v. *Ashby*, 46 Atl. 522, 527, a beneficiary under a will was given the privilege to continue to occupy a mill under a requirement that he keep it in good repair, and the supreme court of New Jersey said: "The terms imposed upon the complainant by his father's will, under which he continued to hold the property, and was in possession at the time the work was done, obliged him, as stated, to 'keep the property in good repair at his own proper cost,' and to pay for 'all needed repairs.' These provisions contained no exceptions relieving the complainant from repairing the property to the extent that it might deteriorate by wear and tear, by the elements, or by any other cause. He had agreed by accepting the continued possession to keep it in good repair, without regard to the cause which occasioned the dilapidation. In *Navigation Co.* v. *Pritchard*, 6 Term. R. 750, there was a covenant 'to uphold and keep in complete repair for seven years' a bridge. Destruction was caused by a flood, and it was held, in the absence of some exception covering this mode of loss, that the covenantor must rebuild." No doubt the court had in mind that the words "in good

repair" had acquired a definite and fixed meaning by usage and the decisions of the courts. When they are used it must be presumed that the parties adopted the sense thus established.

I am unable to agree with the following statement contained in the majority opinion: "The word 'now' contained in the present lease must therefore be accorded some meaning and in our opinion that word clearly implies that the contracting parties had in mind the continued existence of the thing to be kept in repair." In my opinion the word "now" simply limited the lessee's liability to repair the buildings situated on the premises at the date the lease was executed. A general covenant to repair embraces not only the buildings on the premises at the date of the demise, but any new buildings erected during the term unless the contract expresses a different intention, as when it stipulates to keep in repair the demised buildings. That this exception was contemplated in the lease in the case at bar is quite clear. The covenant that it will keep all buildings, structures and erections now on the demised premises in good order and repair, limited the obligation of the lessee to repair the structures, erections and buildings which were on the premises at the date the lease was executed.

In *Armstrong* v. *Maybee,* 17 Wash. 24, 25, the lessee covenanted that "he (lessee) will maintain all the said mill, machinery and buildings in as good condition and repair as the same are *now in,* and return the same to lessor at the expiration or termination of this lease in as good condition as the same are *now in,* reasonable wear and tear from ordinary use alone excepted." A building was destroyed by accidental fire, and the court held that it was the duty of the lessee to rebuild, in view of his covenant to repair. In my opinion it could be urged with more force than in the case at bar, that the word "now" in

the lease in the above citation implied that the contracting parties had in mind the continual existence of the thing to be kept in repair. In deciding that the lessee must rebuild the destroyed building, the court cites Taylor on Landlord and Tenant (8th ed.), Sec. 364, and adds that this citation states the rule which is approved by the great weight of authority. Taylor uses the following language: "Under an express covenant to repair, the lessee's liability is not confined to cases of ordinary and gradual decay, but extends to injuries done to the property by fire, although accidental; and even if the premises are entirely consumed, he is still bound to repair within a reasonable time. And the principle applies to all damages occasioned by a public enemy, or by a mob, flood, or tempest. Thus where the covenant is to repair in general terms, or *to repair, uphold, and support, or however otherwise phrased, if it undertakes the duty of repair, it binds the lessee to rebuild if the premises are destroyed.* For this reason, and in order to afford some protection to the tenant, it is customary to introduce into the covenant to repair, an exception against accidents by fire, tempest, or lightning."

The rule announced in the above authority is recognized in *Bowler* v. *Ahlo*, 11 Haw. 357, 360, where Judge Frear uses the following language: "The covenant to maintain the premises in repair, &c., if made without express exception or qualification, is held (perhaps by a somewhat strained construction) to be an absolute undertaking with no implied exceptions, and the obligation continues though a house forming part of the premises be destroyed by fire; the tenant is obliged to rebuild. *Bullock* v. *Dommitt*, 6 T. R. 650. Hence, it is usual to expressly except damage by fire or other unavoidable casualty."

The majority opinion cites the case of *Gavan* v. *Nor-*

*cross* to sustain the contention that the covenant to repair does not obligate the lessor to rebuild in case the building is destroyed by fire.

In 3 British Ruling Cases, page 352, after stating: "It has been the established rule of the common law for ages that an express covenant to repair binds the covenantor to make good any injury which human power can remedy, even if caused by storm, flood, fire, inevitable accident, or the act of a stranger. *Leavitt* v. *Fletcher* (1865) 10 Allen, 119 (wherein the express covenant of the lessor 'to make all necessary repairs on the outside of the building' was held to bind him to rebuild a carriage house which collapsed from the weight of snow upon the roof)," the following comment is made (p. 354): "In *Gavan* v. *Norcross* (1903) 117 Ga. 356, 43 S. E. 771, 13 Am. Neg. Rep. 495, there was no covenant to repair on the part of the landlord, but the court merely said: 'The word 'repair' means to renew or to restore an existing thing,—not to make a new one. A covenant to repair ordinarily does not bind the landlord to rebuild, though there are cases in which the word 'repair,' aided by the context, has been held to mean 'rebuild.' ' "

In *Allen* v. *Culver*, 3 Denio (N. Y.) 284, 294, the following appears: "There is no doubt but that by a covenant to repair, like the present, the lessors are bound to rebuild, in case of total destruction by fire; and that the lessee may have his action, to recover the damages sustained by reason of the non-performance of this covenant. It has been repeatedly adjudged, that on a general covenant by the lessee to repair, he is bound to rebuild, in case of an accidental fire by which the buildings are destroyed; and I see no principle by which the lessors under such a covenant can be excused" (citing *Bullock* v. *Dommitt*, 6 T. R. 650; 4 Kent's Com. 467).

In *Leavitt* v. *Fletcher*, 10 Allen (Mass.) 119, 121, the

lessor covenanted to make all necessary repairs, etc., and the court said: "That an express covenant to repair binds the covenantor to make good any injury which human power can remedy, even if caused by storm, flood, fire, inevitable accident, or the act of a stranger."

In *Moore* v. *Sun Printing & Publishing Ass'n,* 101 Fed. 591, 593, the circuit court of appeals of the second circuit affirmed the doctrine announced in the above citation, stating: "Thus it has always been settled that when a lessee has covenanted in his lease to keep the demised premises in good order, and surrender them to the lessor at the expiration of the term in as good order as they were originally, he is bound to rebuild, although the premises are meantime destroyed by an accidental fire" (citing *Leavitt* v. *Fletcher*).

In 3 British Ruling Cases at pp. 352, 353, cases are collected which contained a covenant to repair by the lessor and the following appears: "[In] *Crocker* v. *Hill* (1881) 61 N. H. 345, 60 Am. Rep. 322, * * * the lessor covenanted 'to make all necessary repairs on the outside of the buildings, upon notice to him,' and fire consumed the stable of the premises. The court said: 'By an ancient rule of construction, the defendants [lessors] covenanted to make all necessary repairs on the outside of the buildings, without express exception of loss by fire or other unavoidable casualty, required him to construct the outside of the stable in place of the one destroyed in a reasonable time after notice. * * * The defendant cannot complain of the hardship imposed upon him of repairing a loss for which he was not responsible and in no fault; for it was a hardship assumed by himself in his covenant, and against which he might have contracted.'

"And so it was held in *Green* v. *Eales* (1841) 2 Q. B. 225, 1 Gale & D. 468, 11 L. J. Q. B. N. S. 63, 6 Jur. 436,

that the lessor of a house in a borough, who covenants to repair and keep in repair all the external parts of the demised premises, is bound to restore the wall of the demised house which falls after the borough corporation, acting under a local statute, passed after the demise, pulls down an adjoining house, which leaves the wall exposed and without support.

"So, in *Saner* v. *Bilton* (1876) 7 Ch. D. 815, it was held that a covenant of the lessor to 'keep the main walls and main timbers of the warehouse in good repair and condition' obliged him to put the walls and main timbers in good repair after they have sunk and bulged outwards upon the breaking of one of the floors of the warehouse when the lessee, in a reasonable and proper manner, stored grain therein.

"In *Reno* v. *Mendenhall* (1894) 58 Ill. App. 87, where the lessor 'covenanted to keep the buildings in good re- pair,' and two stories were burned from one building, leav- ing the basement roofless, and another frame building was thrown down to prevent its destruction by the same fire, the contention was made by counsel for the lessor that the restoration of the small building to its condition before the fire, and putting a roof over the basement, would not be repairs, but the court thought otherwise and so decided, although it did say: 'But, even if their view be correct, it has been held that a covenant to repair on the part of the lessor includes the duty to rebuild in case of loss or destruction by fire.'

"In *Myers* v. *Burns* (1861) 33 Barb. 401 affirmed in (1866) 35 N. Y. 269, the lessors' covenant 'to keep the hotel and premises in good and necessary repair during the term, at their own proper charge and expense,' obli- gates them to remedy a defect in the flues of certain rooms, which would not draw, or conduct away the gas and smoke, in order to make them inhabitable and useful

O'Brien, Circuit Judge, dissenting.

for hotel purposes. In this case the character of work required to be done on the flues does not appear, but it is a matter of common knowledge, that, in order to remedy defects as serious as those appearing in this case, the chimney invariably has to be reconstructed. The court said: 'The word 'repair' (which signifies restoration to a sound state, after decay or injury), used in connection with the word keep (one of the significations of which is to maintain), can mean nothing else than that the premises were to be made and maintained in a state fitted for the uses to which they were appointed. Good and necessary repair expresses the condition they were to be in at all times during the continuance of the term. No one doubts but the four rooms on Hicks street were out of repair; for no one can doubt that in a climate like ours, when fire is a necessary comfort nine months in the year, rooms with flues which were unfitted to carry off the smoke and gas were not fitted for human habitation, and therefore not in the condition contemplated and intended by the parties to the lease.' "

The lessee having failed to expressly exempt damage by fire or other inevitable casualty in the lease, its covenant to keep the premises in good order and repair, in my opinion, required the defendant to rebuild the destroyed building or to respond in damages for failure so to do.