# Gettysburg Electric Railway, Appellant, *v.* Electric Light, Heat and Power Company of Gettysburg.

*Corporations—Corporation mortgage—Breach of covenants—Foreclosure —Lease—Street railway companies.*

Where a street railway company leases its power house and machinery to an electric light, heat and power company, and the lessee covenants to supply the lessor with power to run its cars, to keep the property leased in good repair, and restore the same in good condition at the end of the term, to pay net receipts to the lessor to be applied to payment of the coupons on the lessor's bonds, and to pay taxes on the leased property, and the lessee executes a mortgage to the lessor as security for the faithful compliance with the terms of the lease, such mortgage may be foreclosed where it appears that the lessee failed to rebuild the power house after it had been destroyed by fire, that the lessee failed to pay certain expenses incident to the proper care of the leased property, which the lessor paid for it, that the lessee applied certain of the net receipts to betterments and improvements, and that it failed to pay taxes on the leased property.

Argued June 3, 1901. Appeal, No. 2, May T., 1901, by plaintiff, from decree of C. P. Adams Co., Jan T., 1897, No. 1, on bill in equity in case of the Gettysburg Electric Railway, The Harrisburg Trust Company, Trustee, and the Gettysburg Transit Company v. The Electric Light, Heat & Power Company of Gettysburg, Pa., and the Keystone Electric Light, Heat & Power Company of Gettysburg. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Bill in equity for the foreclosure of a mortgage.

Swope, P. J., filed the following opinion :

This cause came on to be heard on bill, amended bill, answers and testimony. On motion of the Gettysburg Transit Company, the active plaintiff, many of the allegations of the original bill and prayers were withdrawn and the bill now presents but one question for our consideration : The allegation of default under a lease by the Electric Light, Heat & Power Company of Gettysburg, and a prayer for the foreclosure of a mortgage given on October 17, 1893, by said light company to the Fidelity Insurance, Trust & Safe Deposit Company of Phil-

adelphia (now the Harrisburg Trust Company as substituted trustee), to secure the covenants contained in said lease. A reference to the bill and answer in detail is unnecessary by reason of the following findings of fact.

1. The Gettysburg Transit Company, the present active plaintiff, is the successor in title of the property and franchises of the Gettysburg Electric Railway Company, and the ·Keystone Electric Light, Heat & Power Company of Gettysburg is the · successor in title of the property and franchises of the Electric Light, Heat & Power Company of Gettysburg as hereafter appear.

2. The Gettysburg Electric Railway Comyany was incorporated July 28, 1891, for the purpose of constructing and operating a line of street railways in the borough of Gettysburg and vicinity, and in the exercise of its franchises it constructed a power house for the purpose of generating power by electricity for the propulsion of its cars and constructed a line of railway with poles, wires and appurtenances necessary for the operation of a street or passenger railway.

3. On May 1, 1893, the said Gettysburg Electric Railway Company executed a mortgage on all its property and franchises (including its power house), to the Fidelity Insurance, Trust & Safe Deposit Company of Philadelphia, to secure the payment of the issue of $200,000, of bonds, which mortgage is duly recorded in the office of the recorder of deeds of Adams county.

4. The bonds of this company were practically all held by E. M. Hoffer, its president.

5. The Electric Light, Heat & Power Company of Gettysburg, Pennsylvania, was incorporated June 15, 1893, for the purpose of supplying light, heat and power by electricity to the people of Gettysburg and vicinity, and in the exercise of its franchises it constructed a plant to enable it to carry out the purpose of its incorporation.

6. The stock of this company, amounting to $25,000, was practically all held by E. M. Hoffer, its president.

7. On October 17, 1893, the Gettysburg Electric Railway Company leased unto the Electric Light, Heat & Power Company of Gettysburg, its power house and all the real estate connected therewith, together with all boilers, dynamos and machinery of every kind therein, for the term of thirty years from

May 1, 1893, and as a rental therefor the Electric Light, Heat & Power Company of Gettysburg covenanted and agreed " to keep all said machinery, building and property in good repair and pay all taxes and expenses in and about said real estate and operate said machinery and furnish all the electrical power required by the said Gettysburg Railway Company for propelling its cars and when ever so required; and also furnish light, heat and power for such other purposes as may be agreed upon between the said Electric Light, Heat & Power Company of Gettysburg, and individuals, firms or corporations, and receive the revenues and income therefrom, and after deducting all expenses, costs and charges of repairs and of operating the said leased property shall pay over monthly, on or before the 15th day of the month, the net receipts of the revenue and income for the preceding month unto the Gettysburg Electric Railway Company to be applied to the payment of the coupons on the bonds of said Gettysburg Electric Railway Company issued May 1, 1893, payable in thirty years thereafter to the amount of $200,000, and secured by a mortgage of even date on all the property, rights and franchises of said company, and recorded May 3, 1893, in the office of recorder of mortgages in and for the county of Adams, in mortgage book L, page 126, etc. The net revenue and income thus to be paid over is not to be in excess of $12,000, per annum, and if there is any deficit from that amount in any one year this deficit is to be made up as soon as the net revenue and income are sufficient for that purpose, and this money is to be a trust fund in the hands of the said Gettysburg Electric Railway Company for the exclusive purpose of paying the interest coupons on the bonds of said company as they shall become due. And it is further stipulated and agreed by said Electric Light, Heat & Power Company of Gettysburg that it will execute and deliver unto the Gettysburg Electric Railway Company a mortgage of all its property, rights, franchises, privileges, net income and receipts as security for its faithful compliance with the terms and agreements of this lease to be complied with on its part. The said party of the second part, lessee, covenants and agrees to keep and maintain all of said property hereby leased to it in good repair and at the termination of this lease restore the same to the said party of the first part in good condition."

. . .

8. On October 17, 1893, the Electric Light, Heat & Power Company of Gettysburg executed a mortgage to the Fidelity Insurance, Trust & Safe Deposit Company of Philadelphia in trust to secure the covenants contained in above lease, on all its property, rights, interests, franchises, privileges, net income and revenue and property of all kinds whatsoever, real and personal, now owned, or which may hereafter be owned or possessed by said company, and all easements, rights and appurtenances thereto belonging, or in any wise appertaining, or hereafter to belong or appertain thereto. In this mortgage the Harrisburg Trust Company is now the substituted trustee.

9. Until September 20, 1895, Mr. Hoffer, the president of the railway and light companies was practically the owner of both. He managed and directed their construction and operation, and in his absolute and unquestioned control of both he used the funds of the one to pay the debts of the other and treated them as but one and his own interest.

10. On September 10, 1894, the power house, leased as before mentioned by the railway company to the light company was destroyed by fire.

11. It was repaired in 1894, by E. M. Hoffer, and the expense of repairs was paid by him out of whatever funds he could control, corporate or individual.

12. The books of the railway company would seem to show the payment by said company of the sum of $981.64 on the power house after the fire. But this payment was voluntarily made by the railway company so as to quickly and at once to aid in repairing the loss, with no intention of insisting on the severity of its contract of lease with the light company or of ever claiming their portion of payment toward the rebuilding of the said power house as a forfeiture by the light company under its lease and mortgage. The railway company never made any demand on the light company for the same but it remains for their successors in title to do so. The railway company did pretend at least to keep an account with the light company, but the payment for above repairs were never charged against the light company. Their right so to do they intended to and did waive.

13. On September 20, 1895, in a certain proceeding in equity in the circuit court of the United States for the eastern district

of Pennsylvania, the West End Trust & Safe Deposit Company, of Philadelphia, and E. M. Hoffer were appointed receivers of the Gettysburg Railway Company and of all the railway and property operated by it, real and personal, of whatsoever kind and description.

14. On September 20, 1895, the said receivers of the railway company took charge of both the railway and light companies and managed them both, the active receiver being the West End Trust & Safe Deposit Company, of Philadelphia, acting through its president, Horace A. Doan.

15. On January 1, 1896, one O. S. Hertzog took charge as superintendent of both the railway company and the light company by direction of Horace A. Doan, acting for the West End Trust & Safe Deposit Company, of Philadelphia, one of the receivers of the railway company. And as such superintendent and by such direction he refused to permit the officers of said light company to manage said light company plant.

16. On May 1, 1897, all the property, rights and franchises of the Electric Light, Heat & Power Company of Gettysburg were sold as an entirety by the sheriff of Adams county on execution duly issued out of the court of common pleas of said county, to Adam Ertter and John A. Livers, for the sum of $510 subject to mortgage for $12,000 recorded in mortgage book L, 233 (mortgage referred to in finding 8) and the sheriff delivered a deed for the same to the purchasers, June 22, 1897.

17. On July 15, 1897, said Adam Ertter and John A. Livers reorganized the Electric Light, Heat & Power Company, of Gettysburg, in accordance with the acts of assembly in such case made and provided, under the corporate name of "The Keystone Electric Light, Heat & Power Company, of Gettysburg, Pa.," and after extended contest in reference to the same the legality of said reorganization was duly established.

18. On June 10, 1897, under a decree of the circuit court of the United States for the eastern district of Pennsylvania, foreclosing the mortgage of April 1, 1893 (referred to in finding 3) all the property and franchises of the Gettysburg Electric Railway Company including "a certain contract of lease between the Gettysburg Electric Railway Company and the Electric Light, Heat & Power Company, of Gettysburg, dated October 17," (referred to in finding 7) were sold to Horace A. Doan

et. al., who on December 27, 1897, in accordance with the acts of assembly in such case made and provided, reorganized said company under the corporate name of " The Gettysburg Transit Company."

19. That since said date, December 27, 1897, the said Gettysburg Transit Company have been in charge and control of the property of the light company and still remain in control of the same against the demand and protest of the Keystone Electric Light, Heat & Power Company.

20. The receivers of the Gettysburg Electric Railway Company have filed their final account which has been duly confirmed and have fully ended and closed their said trust.

21. From the books of the Gettysburg Electric Railway Company, in account kept by the said company with the Electric Light, Heat & Power Company of Gettysburg, it would seem upon its face, that the light company was indebted to the railway, September 20, 1896, in the sum of $5,672.98. But these books were so carelessly if not fraudulently kept by the railway company as to furnish us with no sufficiently reliable data to determine the real relation between them. The account starts March 1, 1894, with a charge against the light company (taken from ledger " A " which was destroyed in the fire) of $3,707.68. It also contains a charge against the light company, July 26, 1885, of $350, when the evidence shows this money was paid for attorney's services rendered the railway company alone. This account also charges the light company, August 1, 1895, cash paid A. Ertter, $500, and also August 3, 1895, with cash paid A. Ertter, $249.99, when the evidence shows this money was never paid. The account also charges the light company, September 20, 1896, with $403.35, amount supposed to have been used in payment of accounts of the light company. All the charges in above account, except that of $403.35, made September 20, 1896, were made when Mr. Hoffer was the president of both companies and previous to the appointment of the receivers of the railway company.

22. By reason of the close relationship of these two companies, Mr. Hoffer being president of both, the practical owner of both and the absolute manager and director of the affairs of both, we find as a fact that whatever money was honestly paid by the railway company for the light company during the period

covered by the above account, was voluntarily paid by the railway company and with no intention of ever claiming said payments or loan as a default of the light company under the lease and mortgage.

23. The light company spent certain money, about $1,000 of its revenue, in betterments and improvements, but the improvements were all reasonable and made with the approval and assent of the railway company.

24. The light company after deducting from its revenue and income the expenses, costs and charges of repairs and of operating the said leased property, had no net receipts, or revenue, or income to pay the railway company.

### OPINION OF THE COURT.

From the facts in this case as we have found them, the plaintiffs have failed to show such default by the Electric Light, Heat & Power Company, of Gettysburg, under its lease with the Gettysburg Railway Company, as would justify a decree foreclosing the mortgage securing the conditions of same and we must therefore dismiss this bill.

And now, May 16, 1900, this cause came on to be heard on bill, amended bill, answer and testimony, and after argument of counsel and due deliberation it is ordered, adjudged and decreed, that the bill of the plaintiffs be and it is hereby dismissed, costs to be paid by the Gettysburg Transit Company.

*Error assigned* was the decree of the court.

*Robert Snodgrass*, with him *William* and *William Arch McClean*, for appellant.

*William McSherry*, with him *W. C. Sheely*, for appellee.

OPINION BY MR. JUSTICE BROWN, July 17, 1901 :

The single question before the court below was, the alleged default of the Electric Light, Heat & Power Company of Gettysburg, as lessee in a lease from the Gettysburg Electric Railway Company, executed October 17, 1893. If there was default, the appellants were clearly entitled to a decree for the foreclosure of the mortgage of the former company of the same

date to the Fidelity Insurance, Trust & Safe Deposit Company of Philadelphia, as trustee, for which company the Harrisburg Trust Company, one of the appellants, has been substituted as trustee. The learned judge below substantially found what he could not have avoided finding, that the lessee was in default on several of its covenants, but refused the decree asked for, because, in his judgment, the defaults were not "such," under the lease, "as would justify a decree foreclosing the mortgage." In this he erred, for it is manifest that there were such defaults as justified the foreclosing of the mortgage, and the decree made was improper.

One of the lessee's covenants was, that it would "keep and maintain all of said property hereby leased to it in good repair and at the termination of this lease restore the same to the said party of the first part in good condition." On September 10, 1894, the power house included in the lease was destroyed by fire, and the duty of the lessee, under the foregoing covenant, was to restore it: Hoy v. Holt, 91 Pa. 88. This seems to have been the view of the court below; but the lessee did not rebuild, and, under the twelfth finding of fact, was held not to have been in default. That finding is: "The books of the railway company would seem to show the payment by said company of the sum of $981.64 on the power house after the fire. But this payment was voluntarily made by the railway company so as quickly and at once to aid in repairing the loss, with no intention of insisting on the severity of its contract of lease with the light company or of ever claiming their portion of payment toward the rebuilding of the said power house as a forfeiture by the light company under its lease and mortgage. The railway company never made any demand on the light company for the same but it remains for their successors in title to do so. The railway company did pretend at least to keep an account with the light company but the payment for above repairs were never charged against the light company. Their right so to do they intended to and did waive." The finding should have been not merely that the books "would seem to show the payment by said company of the sum of $981.64 on the power house after the fire," but that this sum had been actually paid by the railway company to do what the light company had failed to do. Failure to perform this covenant

was default, the penalty for which the parties to the mortgage had agreed should be foreclosure. We have searched the evidence in vain to find any warrant for the excuse which the court makes for the defaulting lessee in the statement, that "this payment was voluntarily made by the railway company so as quickly and at once to aid in repairing the loss, with no intention of insisting on the severity of its contract of lease with the light company or of ever claiming their portion of payment toward the rebuilding of the said power house as a forfeiture by the light company under its lease and mortgage." Nowhere, either in the pleadings or in the testimony of the witnesses, does a word appear about the severity of the terms of the lease. It is not even suggested by the lessee itself, from whom the complaint ought naturally first to come, if it could be heard at all; and, in the face of the itemized statement of the expenditures made by the railway company for the default of its lessee, and with the utter absence of any proof that they were made without any expectation of repayment, the appellants most justly complain of the finding that the railway company intended to, and did, waive its right to insist upon the repayment of the sum so expended for the light company. When this bill was filed, the lessee had all the notice due it, that demand was made upon it for its default in not restoring the power house, and it can turn to nothing in the pleadings or proofs to justify the court's findings that the right to hold it to its covenant had been waived. If there was no other default charged and proved, this one, clearly established, in connection with the covenant to repair and restore the power house, substantially found by the court below, but excused for no reasons that appear in the record, would be sufficient for a decree of foreclosure; but there are others that were also substantially so found and likewise excused.

In the twenty-first finding of fact, the court found that "from the books of the Gettysburg Electric Railway Company, in account kept by the said company with the Electric Light, Heat & Power Company of Gettysburg, it would seem upon its face, that the light company was indebted to the railway company September 20, 1896, in the sum of $5,672.98. But these books were so carelessly if not fraudulently kept by the railway company as to furnish us with no sufficiently reliable data

to determine the real relation between them.  The account starts March 1, 1894, with a charge against the light company (taken from ledger 'A' which was destroyed in the fire) of $3,707.68.  It also contains a charge against the light company, July 26, 1895, of $350, when the evidence shows this money was paid for attorneys' services rendered the railway company alone.  This account also charges the light company, August 1, 1895, cash paid A. Ertter, $500, and also August 3, 1895, with cash paid A. Ertter, $249.99, when the evidence shows this money was never paid.  The account also charges the light company, September 20, 1896, with $403.35, amount supposed to have been used in payment of accounts of the light company.  All the charges in above account except that of $403.35, made September 20, 1896, were made when Mr. Hoffer was the president of both companies and previous to the appointment of the receivers of the railway company."  Among the items making up the sum of $5,672.90, there is one of $3,707.68, which appears in the books of the railway company as a charge against the electric light company, and in the books of the latter is entered as a liability to the former.  This item is, therefore, not merely a seeming liability, but a manifestly confessed one.  Deducting the three items of $350, alleged to have been paid to attorneys for services, and $500 and $249.99, paid to A. Ertter, which were found by the court to be improper charges against the electric light company, there still remains a liability of the latter to the railway company, substantially found by the court, of $4,572.99, but which should have been distinctly found; and there was no excuse for not so finding in the wholly unwarranted statement that the "books were so carelessly if not fraudulently kept by the railway company as to furnish us with no sufficiently reliable data to determine the real relation between them."  It does not distinctly appear what this liability was for; but it does not seem to be denied that it was for the default of the light company in failing to pay expenses incident to the proper care of the leased property, which the railway company paid for it, and it is clear that the court regarded it as having been offered in evidence for the purpose of showing default.  But the learned judge concluded that it had no such effect, as appears in the twenty-second finding, which is as follows: "By reason of the close relationship

of these two companies, Mr. Hoffer being president of both, the practical owner of both, we find as a fact that whatever money was honestly paid by the railway company for the light company during the period covered by the above account, was voluntarily paid by the railway company and with no intention of ever claiming said payments or loan as a default of the light company under the lease and mortgage." Hoffer may have been the president of both companies, the practical owner of both, and the absolute manager and director of both; but each company had maintained its separate existence and each was a separate and distinct organization. As president of the railway company he had no power to relieve the light company from the obligation of its covenants, and certainly it was not shown that authority had been given him to do so. Without such power or authority, he could not have impaired the bonds of the railway company, secured in part by the light company's mortgage. As we can discover nothing in the evidence upon which to base this last finding, that "whatever money was honestly paid by the railway company for the light company during the period covered by the above account, was voluntarily paid by the railway company, and with no intention of ever claiming said payments or loan as a default of the light company under the lease and mortgage," it is set aside.

Out of its revenues, according to the twenty-third finding, the light company spent $1,000 in betterments and improvements. This was in direct violation of its covenants as to the disposition of its receipts, and even if these improvements were all reasonable, which is one of the excuses given by this court for this default, it cannot be found in the lease that any such use could be made of the revenue; but, on the contrary, it was a diversion of the money from the specific purposes to which the light company had agreed to apply it. That this diversion was made with "the approval and assent of the railway company" we are compelled to again say, cannot be found in the evidence.

The light company was to pay all taxes on the leased property; but the uncontradicted testimony is that it did not do so. They were paid at times by the railway company.

We need not dwell longer on the foregoing defaults, nor consider the others to which appellants call our attention. Such

failures on the part of the light company to comply with its covenants were clearly proven as entitled the appellants, now possessing all the rights under the lease and mortgage of October 17, 1893, to the decree asked for.

The decree of the court below is reversed, and it is now adjudged and decreed that the Electric Light, Heat & Power Company of Gettysburg, the mortgagee named in the mortgage of October 17, 1893, and the Keystone Electric Light, Heat & Power Company, its successor in title, are in default under the terms and conditions thereof, and the Harrisburg Trust Company, as the substituted trustee in the said mortgage, be and is hereby authorized and directed to make sale of the property, rights, privileges and franchises named and described in said mortgage, at such times and in such manner and upon such terms as the court below may direct and fix, to which the record is remitted for the enforcement of this decree, the costs of this appeal to be paid by the appellees.