MILLS LAND CORPORATION, Plaintiff, *v.* GILBERT C. HALSTEAD, JR., et al., Defendants.

Supreme Court, Special Term, Nassau County, February 1, 1945.

*Geis, Forman & Schulze* for defendants.

*Remsen B. Ostrander* for plaintiff.

CUFF, J. In this proceeding to foreclose a mortgage on real property, defendant mortgagor moves to dismiss the complaint because of insufficiency. This complaint is based upon a provision in the mortgage to the effect that, at plaintiff's option, payment of the full amount of the mortgage may be required if the mortgaged buildings " are not maintained in reasonably good repair ". The complaint contains allegations to the effect that through the mortgagor's neglect the premises fell into disrepair, that the mortgagor was duly notified by plaintiff of that condition, and that pursuant to its option, plaintiff

declares the whole unpaid principal of the mortgage due. Those allegations on a motion of this kind must be deemed established facts. (*Sweet* v. *Hollearn,* 141 Misc. 135, 137.)

The mortgagor rests his motion for a nonsuit on the mortgage moratorium laws (L. 1933, ch. 793), which, he argues, protect him against foreclosure except for failure to meet the interest and tax charges. (Civ. Prac. Act, § 1077-a.)

Plaintiff relies upon the concluding clause in the statute (§ 1077-a) to sustain its complaint.

Stripped of its unrelated verbiage, section 1077-a provides: " During the * * * emergency * * * and notwithstanding any inconsistent provisions * * * of any * * * mortgage, no action * * * for the foreclosure of a mortgage upon real property * * * shall be maintainable, solely for or on account of a default in the payment of principal secured by such mortgage * * * although the payment of such principal * * * may be due by the terms of such * * * mortgage, *provided* * * * *that where a default authorizing foreclosure shall have occurred under the terms of the * * * mortgage,* * * * *other than the non-payment of principal* * * * *then the rights and remedies of the holder* * * * *shall not be affected by this act.*" (Italics mine.)

The reason for the timely enactment of the moratorium laws in this State was the unexpected, depressed, unnatural values which good real estate inherited as an incident of the " depression ", rendering replacement of mortgage loans thereon temporarily impossible. Ordinary mortgage lending companies had ceased to function; banks, themselves barely having esca₁ ᵈ disaster under the impact, had discontinued making loans. Because real property valuations failed to justify suitable lendings at the time, and for the further reason that funds were unavailable even where the property warranted the risk, this State in the exercise of characteristic wisdom, halted the panicky, vain search for mortgage money by excusing all from paying then due or to become due principal on mortgages dated prior to July 1, 1932 (Civ. Prac. Act, § 1077-g), even including amortization requirements.

The landowner was the victim of this economic upheaval although no act of his contributed to its inception or aided in its destructive progress. Worse than that, he had been led to believe that mortgages held by title companies and banks (called " institutional loans ") would be continued indefinitely if all the mortgage obligations were properly discharged by

him, save paying the principal, which was never sought. A tradition known as the "open mortgage" came into being. It was a security highly regarded by both borrower and lender. The banker preferred it in that form. He labeled it a "past due" asset. The house owner felt secure and trustworthy as time lapsed and the overdue mortgage was not called. And no one said then that that practice was not a sound economy!

That was the frame of mind into which the mortgagor had been lulled, when suddenly the force of the depression struck him and there was a mortgagee's demand for his principal but no corresponding fountain of supply where new funds could be obtained. It was then, and for the immediate relief of that disconcerting development in the real estate market, that the State acted. The legislation was devised to relieve that particular distracted landowner.

Nowhere is there any provision in the moratorium that a mortgagor who suffers the security to deteriorate by willful waste, may have cover beneath its beneficent protection. He was never considered. That landowner's distress is his own creation. His is a default "authorizing foreclosure [which] shall have occurred under the terms of the * * * mortgage * * * other than the non-payment of principal". As to him the "rights and remedies of the holder of the mortgage shall not be affected by this act." (Civ. Prac. Act, § 1077-a.)

Defendant's contention that the "maintainance" clause contained in the mortgage fails to specifically authorize foreclosure upon its violation and, therefore, this proceeding may not be brought, cannot be sustained. A foreclosure may be based upon the "nonperformance of any act" required by the mortgage (41 C. J., Mortgages, § 1048) and Wiltsie on Mortgage Foreclosure states that foreclosure may rest upon violation of a "covenant to repair the premises" (4th ed., Vol. 1, § 74). (See, also, *Electric Railway* v. *Electric Light Co.*, 200 Pa. 372.)

The mortgagor submits no authority to support his argument that the complaint is lacking because the nature of the needed repairs is not pleaded and that there is no allegation showing that a demand for payment of the principal was made by plaintiff and rejected by the mortgagor. I cannot agree that they are essentials of a complaint of the kind under consideration.

The motion is denied.