A. J. CAPUTO and Homer W. King, Receivers for Andy Gard Corporation, Plaintiffs,

v.

BLACKSTONE MUTUAL INSURANCE COMPANY, a corporation, Defendant.

Civ. A. No. 68–87.

United States District Court,
W. D. Pennsylvania.

March 8, 1971.

James H. McConomy and Kathleen Merry, Pittsburgh, Pa., for plaintiffs.

Thomas Lewis Jones, Allen S. Wuchenich, Pittsburgh, Pa., for defendant.

## OPINION

GERALD J. WEBER, District Judge.

This case involves the liability of an insurance company for damage to personal property by fire where the damaged property was in the possession of the insured Lessee at the time of the loss under a counter-bond in an Action of Replevin brought by the Lessor of the property against the Lessee, after notice of termination of the Lease for default by the Lessee, where the Lessee denied default and claimed the right of possession. The matter was submitted to the court under a Stipulation of Facts.

## FINDINGS OF FACT

1. In 1964 Plaintiff Andy Gard Corporation received possession of (inter alia) six plastic molding machines under lease-purchase agreements from H P M Corporation, the manufacturer of the machines. Andy Gard paid an initial security deposit, was required to make sixty monthly payments and was entitled to purchase the machines at the end of any year for a decreasing balance due. The agreements are identical in their pertinent provisions, they bear the designation "Lease" and H P M Corporation is identified as "Lessor" and Andy Gard Corporation is designated "Lessee".

2. At all times material, legal title to the machines remained in H P M Corporation, the original Lessor.

3. At all times material physical possession of the machines remained in Andy Gard at its manufacturing plant.

4. H P M, the original Lessor, assigned its rights as Lessor under the agreement to Talcott, Inc. in 1964.

5. The lease-purchase agreements required Andy Gard to pay taxes on the machines, keep them in repair, and to insure them against loss, and to return the property to the Lessor at the end of the Lease or in the event of default. Lessee was not permitted to remove, loan, part with possession, sublet or dispose of the property, nor assign or transfer the Lease.

6. During the time that Talcott, Inc., was Lessor under the Lease and entitled to receive rents, Talcott was also acting as a factor for Andy Gard, collecting its accounts receivable.

7. On August 29, 1966, Talcott, Inc., notified Andy Gard that the Leases were in default by failure to make monthly payments since May 1966. The notice demanded payment of unpaid rentals, of termination of the Leases, and demanded the return of the leased property.

8. On September 26, 1966, Talcott filed a Replevin Action in the Court of Common Pleas of Allegheny County, Pennsylvania, demanding possession of the property and posted a Replevin Bond of $850,000. Andy Gard filed a counter-bond in the same amount and retained possession of the machines to abide the determination of the claims.

9. Andy Gard's Answer to the Complaint in Replevin admitted the existence of the Leases, admitted receipt of the notice of default, but denied any default under the Leases. Andy Gard alleged that Talcott was liable to it for large sums of money collected on its accounts receivable for which a separate suit had been instituted by Andy Gard in the United States District Court. Andy Gard's Answer to the Replevin suit asked that it be found entitled to possession of the machines and that it be awarded costs.

10. During the pendency of the above actions the six machines were damaged by fire while in the plant premises of Andy Gard on January 28, 1967.

11. Defendant Blackstone Mutual Insurance Company insured Andy Gard at the time of the loss for damage by fire under the following policy provisions:

"Unless otherwise provided herein, if this Policy covers personal property owned by the Insured, it shall also cover while in the custody of the Insured on the described premises or in the open within 500 feet thereof: (a) personal property of others which the Insured is under obligation to keep insured; (b) the interest of the Insured in and legal liability for loss or damage by any of the perils herein insured against to personal property belonging to others."

12. No question has been raised that any legal liability for loss or damage would fall on Andy Gard because of its negligence in causing said loss.

13. The six machines covered by this submission are the six machines described in Paragraph 2 of the Stipulation submitted by the parties.

## DISCUSSION

Andy Gard has made claim for the damage to the machines by fire under the insurance policy and Blackstone refuses to pay the claim for several reasons as set forth herein:

1. Andy Gard was not the owner of the machines.

This cannot be disputed. At all times legal title to the machines remained in H P M. But this was a bare legal title. All rights of H P M as Lessor had been assigned to Talcott, Inc. However, this does not foreclose recovery under other terms of the insuring agreement covering the property of others in the custody of the insured.

2. At the time of the fire loss the leases for the machines had been legally cancelled by Talcott, Inc. and Talcott, having given notice thereof, was legally entitled to possession.

Despite this notice of termination and demand for return Andy Gard did not return the machines. Even when action was taken to repossess the machines by Talcott's filing an Action of Replevin and posting a bond in double the value of the machines, Andy Gard retained possession of the machines under a claim of right by posting its counter-bond.[1] Under this situation Andy Gard was legally entitled to retain physical possession until the rights of the parties were finally determined.

1. We note that in some jurisdictions this bond is called a "forthcoming bond".

It has been generally held that a defeasible title, the institution of proceedings to set aside title, judgments in foreclosure proceedings, or the institution of replevin proceedings are not sufficient to avoid insurance coverage of property in the possession of the insured. 43 Am.Jur.2d, Insurance Sec. 892; National Union Fire Ins. Co. v. Short, 32 F.2d 631 [6th Cir., 1929] Annot: 64 A.L.R. 753. This has been particularly applied where judgment in replevin had been obtained by a conditional seller who did not actually take possession of the property. Midwest Metal Stamping Co. v. Citizens Fund Mutual Fire Ins. Co., 229 Iowa 969, 295 N.W. 444 [1940]; Annot: 133 A.L.R. 779. In that case the court held that under the conditional sales agreement the seller always had the right to retake possession of the property on default and that the replevin action and judgment therein did not relieve the buyer from the payment of the purchase price.

3. Defendant argues that the obligation of Andy Gard to keep the property insured was an obligation imposed by the lease-purchase contract and that such contract was terminated by Talcott, Inc. on its notice of default. Therefore, the continued possession of Andy Gard was at best a mere bailment imposing no obligation to insure. Under a bailment Andy Gard would have no liability to the owner of the machines except for damage due to its own negligence, which has not been asserted here.

Andy Gard did not recognize Talcott's demand for return of the machines. Andy Gard denied the right of termination and retained possession of the machines under a claim of right, and filed a counter-bond in double the value of the machines to retain legal possession until the matter was decided. It was at this state of affairs that the damage by fire occurred.

Defendant argues that Andy Gard's obligation to keep the property insured terminated with the cancellation of the contract by Talcott, Inc. and no covenant to insure can be implied thereafter to give coverage under clause (a) of the policy provision recited above.

Nevertheless we cannot interpret the Lease between the parties as relieving Andy Gard of its responsibility to insure immediately upon receipt of Talcott's notice of default and termination. The Lease itself provides:

"6. *Indemnity by Lessee.* The Lessee agrees to indemnify and save harmless of and from any damage to or loss of the Leased Property during the term hereof, *however occasioned.* Lessee agrees to keep the Leased Property insured in the name of the Lessee and Lessor as their respective interests may appear. * * * The risk of loss of the Leased Property shall *at all times* be on the Lessee and the loss, injury or destruction of the property shall not release Lessee hereunder." (Emphasis supplied.)

In addition the Lease provided:

"8. *Return of Leased Property.* Upon expiration of this Lease by lapse of time * * * or by action of the Lessor following some default by Lessee, the Lessee at its expense will promptly return the Leased Property to the Lessor at Lessor's place of business in as good condition as when received by Lessee, reasonable wear and tear excepted; * * *."

and

"2. *Use and Repair of Leased Property.*

* * * * * *

If the Leased Property when returned to the Lessor is not in good condition and repair, Lessor may make all repairs and replacements necessary to place it in as good condition as it was at the date of commencement of the term hereof, reasonable wear and tear alone excepted, and Lessee shall pay the costs thereof on demand."

In view of the above express covenants of the Lease we find that Andy Gard was under an unconditional obligation to repair. Sun Printing and Publishing

Assoc. v. Moore, 183 U.S. 642, 22 S.Ct. 240, 46 L.Ed. 366 [1902]; United States v. Seaboard Machinery Co., 270 F.2d 817 [5th Cir., 1959]; J. E. Faltin Motor Trans. Inc. v. Eazor Exp. Inc., 172 F. Supp. 175 [W.D.Pa., 1959] affd. 273 F.2d 444 [3rd Cir., 1960].

Inasmuch as this obligation of absolute liability was expressly assumed by the Lessee, and was to continue until the property was returned to the Lessor, we find that the express obligation to insure also continued until the property was returned. The obligation to keep the property insured against loss by fire is contained in the same section of the lease (Par. 8) as is the indemnity agreement.

> "Since plaintiff, by his contracts, increased his common-law liability to the bailors by agreeing to insure their goods, he became legally liable for the full value of the wheat lost." Gardner v. Freystown Mut. Fire Ins. Co., 350 Pa. 1 [1944] at p. 6, 37 A.2d 535 at p. 537.

In Loeb v. Ferber, 346 Pa. 348, 30 A. 2d 126 [1943] cited by defendants, this principle was recognized but not applied in that case because of the absence of clear and explicit language in the agreement. The court held that a mere statement, "to return in good condition" did not impose such a liability because "it does no more than express in terms the same obligation which the law raises from the facts themselves." (p. 350, 30 A.2d p. 127). However, the Court distinguished such language from those involving a promise by a lessee or bailee not merely to return the bailed or leased property but also to keep it in repair, in which case it would be obliged to restore the property, citing Hoy v. Holt, 91 Pa. 88; Gettysburg Electric Ry. v. Electric L. H. & P. Co., 200 Pa. 372, 49 A. 952; McKinley v. C. Jutte & Co., 230 Pa. 122, 79 A. 244.

Under these circumstances we hold that the obligation to keep in repair, and to provide insurance was not terminated by the notice of default and termination and the demand for redelivery until the machines were returned to the Lessor. Even upon return, there is an express obligation to pay for repairs made by Lessor if the property was not returned in good repair.

4. Defendant argues that because it did not hold title to the machines and because its right of possession had been terminated by the notice of cancellation of the Lease, Andy Gard had no insurable interest and the lack of insurable interest of Andy Gard in the property at the time of the fire damage forestalls its right of recovery under the policy.

It is established that Andy Gard did not hold legal title; neither did Talcott, Inc. Legal title remained in the original Lessor H P M, although all of H P M's other rights were assigned to Talcott, Inc. Whether or not Andy Gard's continued possession were to be declared wrongful, Andy Gard was rightfully in possession at the time of the fire damage. Andy Gard remained liable to redeliver the machines in good condition or to pay the value of the machines in the event of an adverse determination of the replevin action.

It is well established in Pennsylvania that a bailee may insure in his own name the property in his possession, and in case of loss recover the full amount of his policy, holding all beyond his own interest in trust for the bailor. Roberts v. Firemen's Insurance Company, 165 Pa. 55, 30 A. 450 [1894]; Gardner v. Freystown Mut. Fire Ins. Co., supra.

It is further to be noted that clause (b) of the insuring agreement insures *any interest* of the Insured and *any legal liability* for loss or damage to the property of others in its custody. In such a case, the law of Pennsylvania holds:

> "These clauses protected more than plaintiff's *interest* in the equipment; they insured his *legal liability* in respect to it." McCoy v. Home Insur-

**1256**

ance Co., 170 Pa.Super. 38, 41, 84 A. 2d 249, 251 [1951].

Defendant relies heavily on the recent decision of the Pennsylvania Supreme Court in Van Cure v. Hartford Fire Insurance, 435 Pa. 163, 253 A.2d 663 [1969]. There the owner of real estate was covered by a fire insurance policy. While the policy was in effect the property was condemned for public purposes by a Redevelopment Authority. A bond for the appraised value was tendered to the owner who refused it. The bond was then approved by the Court of Common Pleas which approval gave the Redevelopment Authority the right to enter and take possession of the premises. The Authority allowed the former owner to remain in possession to reduce the detention damage that might be awarded upon a final determination of value. A fire destroyed the premises while the former owner was still in possession and she claimed the loss under her fire insurance policy. The Court held that in such a circumstance the insurance company was not liable because the former owner had no insurable interest.

The Court held that she had no "legally enforceable interest" to support an insurable interest because title to the property had passed at the time of condemnation and approval of the payment bond. Thereafter, the former owner's interest is not in the property but in the right to receive payment therefor, secured by the bond. She had no enforceable legal right of possession because her possession was at the will of the Authority which could remove her at any time.

Under the theory of "factual expectation" the Court also found no insurable interest. The owner had no factual expectation from the continued existence of the property, but only a right to compensation, a right to legal determination of just compensation by viewers, a jury verdict and appeal, a right to damages for delay in payment, and a right to recover the property back, if the owner desires, in the event condemnation is abandoned. "All of these rights relate to condemnee's right to payment, not to any right to the property itself." 435 Pa. p. 171, 253 A.2d p. 667.

"Therefore, regardless of what theory of insurable interest is preferred, we conclude that appellant has presented no expectation of loss upon destruction of the condemned property which would support her recovery on these policies." Ibid, p. 173, 253 A.2d p. 668.

In other words, the plaintiff lost nothing by the fire, she was already assured of payment for the fair value of the property prior to the fire, and this right was in no way diminished by the destruction of the property. The former owner suffered no risk of destruction by fire after the condemnation.

But in Andy Gard, the risk of loss or destruction remained with Andy Gard. It had posted a counter-bond to guaranty delivery or possession in good condition or to pay the value of the machines in the event of adverse determination. Obviously, after the fire it could no longer deliver the machines without repairing them at Andy Gard's cost, and if it had to pay the value of the machines then it suffered the loss of the cost of the repairs.

"It is well settled that any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property itself." Harrison v. Fortlage, 161 U.S. 57 [1896] at p. 65, 16 S.Ct. 488 at p. 490, 40 L.Ed. 616.

The Court finds it difficult to understand defendant's argument that Andy Gard had no expectation of loss at the time of the destruction of the machines. It asks "What loss does one suffer when someone else's property is damaged or destroyed?" At the time of the destruction Andy Gard was the legal custodian of the property pending determination of the issue of right of possession. If the decision was favorable,

Andy Gard could keep possession of the property and this loss by damage was a direct loss to Andy Gard. In the event of an adverse decision, Andy Gard had either to return the property in good condition or pay its value as determined before the fire damage. This risk rested upon Andy Gard alone; Talcott, Inc. risked no loss. If it prevailed in the possessory action it was entitled to return of the machines in good condition or payment of their full value before destruction. H P M risked no loss, it had assigned all rights of rentals and possession to Talcott, Inc.

5. Defendant argues the effect of the subsequent disposition of the replevin action by Talcott, Inc. against Andy Gard and the counter-suit by Andy Gard against Talcott in this court.

These suits were settled by stipulations of the parties and the entry of a money judgment to Talcott after the fire damage. We have made no findings of fact with respect to subsequent transactions because in our view all rights under the policy are fixed as of the time of the loss insured against.

At the time of the fire the machines were in the legal possession of Andy Gard as a custodian under its counterbond in the replevin action.

"The rights of the insured are generally considered fixed as of the time the loss occurs." 4 Appleman, Insurance Law and Practice Sec. 2122, p. 34.

"The insurable interest of the parties to an insurance contract must be determined by the facts existing at the time of the loss, and such interest is not defeated by unascertained and speculative future events." Ibid, Sec. 2245, p. 167.

citing American Insurance Co. v. Treasurer School District No. 37, 273 F.2d 757 [10th Cir., 1959].

That this is the Pennsylvania rule is recognized in Vogel v. Northern Assurance Co., 114 F.Supp. 591 [E.D.Pa. 1953], affd. 219 F.2d 409 [3rd Cir., 1955].

"The reason assigned is that the rights and liabilities of the parties to the insurance contract become fixed when the loss occurs." 219 F.2d at p. 412.

While we hold that the subsequent agreements between Lessor and Lessee, and the terms of the Stipulation by which both the replevin action and the District Court action between them were settled have no effect on the liabilities between Andy Gard and Blackstone Mutual Insurance Company at the time of the fire loss, we must note that this was a money settlement and not a judicial determination of the rights of the parties.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the matter.

2. A contract of insurance was issued by Blackstone Mutual Insurance Company to Andy Gard Corporation on October 26, 1956 covering loss for damage by fire to the contents of Andy Gard's plant at Oakmont, Pennsylvania, which was in effect January 28, 1967.

3. The contract of insurance required Blackstone Mutual Insurance Company to pay for loss by damage by fire to property

in the custody of the Insured on the described premises

which were

(a) personal property of others which the Insured is under obligation to keep insured

and

(b) the interest of the insured in and legal liability for loss or damage by any of the perils insured against to personal property belonging to others.

4. Andy Gard had an insurable interest in property of others on its premises which was in its custody by lease or bailment from others.

5. Under the terms of the Lease between Andy Gard and Talcott, Inc., Andy Gard was obligated to keep the Leased Property insured at all times, until possession was returned to the Lessor.

6. Under the terms of the Lease between Andy Gard and Talcott, Andy Gard was obligated to keep the Leased Property repaired, until possession was returned to the Lessor, and pay the cost of any repairs necessary on recovery of possession.

7. Under its Counter-Bond in Replevin, Andy Gard was legally in possession of the Leased Property at the time of its damage by fire.

8. Under its Counter-Bond in Replevin, Andy Gard was liable to pay the value of the property to Talcott, Inc. if it failed to maintain its right of possession in the Replevin Action.

9. The six machines described in the Lease between Talcott, Inc. and Andy Gard were at the time of the fire damage:

personal property of others which the Insured was under obligation to keep insured.

10. Andy Gard had an interest in and legal liability for loss or damage to the six machines to Talcott, Inc. at the time of their damage by fire.

11. Blackstone Mutual Insurance Company is liable to Andy Gard Corporation, its receivers and its assigns for damage done to the six machines described herein by fire on January 28, 1967 under the provisions of the contract of insurance between them.

### ORDER

Now this *8th day of March, 1971*, it is ordered that Judgment be entered for Plaintiffs against Defendant Blackstone Mutual Insurance Company for liability on the claim of Plaintiffs for damage by fire to the property covered by the Stipulation entered in this case.

The matter will be set down for further hearing or trial on the assessment of damages.